THE HONORABLE ROBERT S. LASNIK

1
2
3
4
5
6
7

8              UNITED STATES DISTRICT COURT

9            WESTERN DISTRICT OF WASHINGTON

10                    AT SEATTLE

11

12   KAELI GARNER, *et al.*,                    )   Case No. 2:21-cv-00750-RSL
                                                )
13                          Plaintiffs,         )   **PLAINTIFFS' OPPOSITION TO
                                                )   DEFENDANTS' MOTION TO DISMISS
14          v.                                  )   FIRST AMENDED CONSOLIDATED
                                                )   COMPLAINT**
15   AMAZON.COM, INC., *et al*.,                )
                                                )   NOTE ON MOTION CALENDAR:
16                          Defendants.         )   January 28, 2022
                                                )
17  ─────────────────────────────────          )   ORAL ARGUMENT REQUESTED

18
19
20
21
22
23
24
25
26

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**TABLE OF CONTENTS**

PAGE(S)

I.    INTRODUCTION ...............................................................................................1

II.   SUMMARY OF THE COMPLAINT'S WELL-PLED FACTS ..........................5

III.  LEGAL STANDARD..........................................................................................7

IV.   ARGUMENT ......................................................................................................8

    A.   The Court Should Not Dismiss The Registered Plaintiffs' Non-Washington Wiretapping Claims........................................................8

        1.   Washington Law Likely Applies to the Registered Users' Claims Under Washington's Choice of Law Rules. ..............................9

        2.   The Court Should Not Dismiss Plaintiffs' Alternative State Law Claims .................................................................................11

    B.   Plaintiffs Did Not Consent To Being Wiretapped By Their Alexa Devices .........13

        1.   The Unregistered Plaintiffs Did Not Expressly Consent To Being Wiretapped By Alexa................................................................13

        2.   The Registered Plaintiffs Did Not Expressly Consent To Being Wiretapped By Alexa................................................................14

            a.   The Alexa Devices Did Not Properly Notify Plaintiffs That They Were Being Recorded Under Washington Law ..................14

            b.   The Privacy Notice Does Not Disclose That Registered Plaintiffs' Private Conversations Not Intended For Alexa Would Be Recorded, Stored, And Disclosed By Defendants........15

        3.   No Plaintiff Impliedly Consented To Being Wiretapped By Alexa ..........21

    C.   The FACC States A Claim Under The Federal Wiretap Act Because Amazon Was Not A Party To All The Intercepted Communications ..................27

    D.   The Complaint States A Claim Under The Federal Stored Communications Act ................................................................................30

        1.   The Complaint Pleads Facts Sufficient To Allege Defendants Provided An "Electronic Communication Service" ................................31

        2.   The Complaint Pleads That Plaintiffs' Communications And Data Were Held In "Electronic Storage"..............................................32

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                - i -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

3. The Complaint Pleads That Defendants Divulged Class Members' Communications To Third Parties, Including Amazon's Contractors Around The World ..............................................33

E. The Complaint States A Claim Under The Washington Consumer Protection Act Because It Pleads "Unfair Or Deceptive Acts" And Injury ..........36

1. The Complaint Pleads "Unfair Or Deceptive Acts" Under The WCPA ...........................................................................................37

a. Rule 9(b) Does Not Apply ..............................................39

b. Plaintiffs Adequately Plead Unfair And Deceptive Conduct ........43

2. The Complaint Pleads Sufficient Injury Under The WCPA....................46

V. CONCLUSION.............................................................................................51

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                          - ii -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

## **<u>TABLE OF AUTHORITIES</u>**

2

**PAGE(S)**

3

**CASES**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................8

*Berman v. Freedom Fin. Network, LLC*,
   2020 WL 5210912 (N.D. Cal. Sept. 1, 2020) ........................................................17

*Brewer v. Dodson Aviation*,
   447 F. Supp. 2d 1166 (W.D. Wash. 2006)..............................................................10

*Brotherson v. Pro Basketball Club, LLC*,
   604 F. Supp. 2d 1276 (W.D. Wash. 2009)..............................................................50

*Brown v. Google LLC*,
   525 F. Supp. 3d 1049 (N.D. Cal. 2021) .................................................................27

*Brutscher v. GEICO General Ins. Co.*,
   2014 WL 7340724 (W.D. Wash. Dec. 22, 2014) ...................................................10

*Bund v. Safeguard Props. LLC*,
   2018 WL 3917930 (W.D. Wash. Aug. 16, 2018) ...................................................41

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) .....................................................................20

*Cervantes v. United States*,
   330 F.3d 1186 (9th Cir. 2003) .................................................................................8

*Corbett v. Pharmacare U.S., Inc.*,
   --- F. Supp. 3d ---, 2021 WL 2473950 (S.D. Cal. June 17, 2021) .........................12

*Cousineau v. Microsoft Corp.*,
   992 F. Supp. 2d 1116 (W.D. Wash. 2012)..............................................................50

*Crowley v. CyberSource Corp.*,
   166 F. Supp. 2d 1263 (N.D. Cal. 2001) .................................................................32

*Davis v. HSBC Bank Nevada, N.A.*,
   691 F.3d 1152 (9th Cir. 2012) ...............................................................................45

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                          - iii -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Dennis v. Mylife.com,*
 2021 WL 6049830 (D.N.J. Dec. 20, 2021) ................................................................ 48

*Domain Name Comm'n Ltd. v. DomainTools, LLC,*
 449 F. Supp. 3d 1024 (W.D. Wash. 2020) ................................................... 36, 38, 47

*Federal Trade Comm'n v. Neovi, Inc.,*
 604 F.3d 1150 (9th Cir. 2010) ................................................................................. 45

*First Advantage Background Servs. Corp. v. Private Eyes, Inc.,*
 569 F. Supp. 2d 929 (N.D. Cal. 2008) ...................................................................... 29

*Forcellati v. Hyland's, Inc.,*
 876 F. Supp. 2d 1155 (C.D. Cal. 2012) .................................................................... 12

*Gragg v. Orange Cab Co.,*
 942 F. Supp. 2d 1111 (W.D. Wash. 2013) ................................................................ 50

*Grigsby v. Valve Corp.,*
 2013 WL 12310666 (W.D. Wash. Mar. 18, 2013) .................................................... 41

*Hancock v. Urban Outfitters, Inc.,*
 830 F.3d 511 (D.C. Cir. 2016) ................................................................................. 48

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,*
 105 Wash. 2d 778, 719 P.2d 531 (1986) ..................................................... 36, 37, 46

*Hernandez v. City of San Jose,*
 241 F. Supp. 3d 959 (N.D. Cal. 2017) ...................................................................... 36

*In re Clorox Consumer Litigation,*
 894 F. Supp. 2d 1224 (N.D. Cal. 2012) .................................................................... 12

*In re Facebook Biometric Information Privacy Litig.,*
 185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...................................................................... 4

*In re Facebook, Inc. Consumer Privacy User Profile Litig.,*
 402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................................... 20

*In re Facebook, Inc. Internet Tracking Litig.,*
 956 F.3d 589 (9th Cir. 2020) ............................................................................ passim

*In re Google Assistant Privacy Litig.,*
 457 F. Supp. 3d 797 (N.D. Cal. 2020) ......................................................... 20, 34, 35

*In re Google Assistant Privacy Litig.,*
 --- F. Supp. 3d ---, 2021 WL 2711747 (N.D. Cal. July 1, 2021) ....................... 35, 48

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - iv -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*In re Google Cookie Placement Consumer Privacy Litigation*,
   806 F.3d 125 (3d Cir. 2015)...........................................................................28

*In re Google Inc. Gmail Litig.*,
   2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) .......................................... 16, 20, 24

*In re JetBlue Airways Priv. Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) .........................................................32

*In re Marriage of Farr*,
   87 Wash. App. 177, 940 P.2d 679 (1997).....................................................23

*Kelley v. Microsoft Corp.*,
   251 F.R.D. 544 (W.D. Wash. 2008) ............................................................10

*Klem v. Wash. Mut. Bank*,
   176 Wash. 2d 771, 295 P.3d 1179 (2013)..................................... 37, 38, 39, 45

*Kornfeind v. New Werner Holding Co.*,
   241 A.3d 1212 (Pa. Sup. Ct. 2020) .............................................................12

*Lawson v. Ocwen Loan Servicing, LLC*,
   2011 WL 564376 (W.D. Wash. Feb. 8, 2011) ..............................................46

*Lightfoot v. MacDonald*,
   88 Wash. 2d 331, 544 P.2d 88 (1976).........................................................37

*Lohr v. Nissan N. Am., Inc.*,
   2017 WL 1037555 (W.D. Wash. Mar. 17, 2017) ..................................... 40, 41

*Loops, LLC v. Amercare Prods., Inc.*,
   636 F. Supp. 2d 1128 (W.D. Wash. 2008)....................................................46

*Lopez I*,
   519 F. Supp. 3d ................................................................................. passim

*Lopez v. Apple, Inc.*,
   --- F. Supp. 3d ---, 2021 WL 4059106 (N.D. Cal. Sept. 2, 2021)............... 15, 26, 30

*Mainz Brady Grp., Inc. v. Shown*,
   2017 WL 4538968 (W.D. Wash. Oct. 11, 2017) ...........................................39

*McCoy v. Alphabet, Inc.*,
   2021 WL 405816 (N.D. Cal. Feb. 2, 2021) .............................................. 16, 20

*Meyerson v. Prime Realty Servs., LLC*,
   796 N.Y.S.2d 848 (N.Y. Sup. Ct. N.Y. County 2005)....................................48

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - v -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Mikron Industries, Inc.*,
  2007 WL 3033933 .................................................................................... 10, 11

*N. Seattle Health Ctr. Corp. v. Allstate Fire & Cas. Ins. Co.*,
  2016 WL 4533055 (W.D. Wash. Jan. 27, 2016)................................................ 41

*Nemykina v. Old Navy, LLC*,
  461 F. Supp. 3d 1054 (W.D. Wash. 2020)................................................. 39, 41

*Nguyen v. Doak Homes, Inc.*,
  140 Wash. App. 726, 167 P.3d 1162 (2007)................................................... 41

*Nordstrom, Inc. v. Tampourlos*,
  107 Wash. 2d 735, 733 P.2d 208 (1987)........................................................ 47

*Opperman v. Path, Inc.*,
  205 F. Supp. 3d 1064 (N.D. Cal. 2016) ................................................... 16, 20

*Orkin Exterminating Co., Inc. v. FTC*,
  849 F.2d 1354 (11th Cir. 1988) ...................................................................... 45

*Panag v. Farmers Ins. Co. of Wash.*,
  166 Wash. 2d 27, 204 P.3d 885 (2009)........................................................... 37

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*,
  96 F.3d 1151 (9th Cir. 1996) ............................................................................ 8

*Pierce v. NovaStar Mortg., Inc.*,
  422 F. Supp. 2d 1230 (W.D. Wash. 2006) ...................................................... 25

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019).................................................. 36

*Rubenstein v. Neiman Marcus Grp. LLC*,
  687 F. App'x 564 (9th Cir. 2017) .................................................................... 42

*Ruiz v. Fernandez*,
  949 F. Supp. 2d 1055 (E.D. Wash. 2013) ......................................................... 8

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .............................................................. 7, 8, 45

*Sonner v. Schwabe N. Am., Inc.*,
  2015 WL 13307076 (C.D. Cal. Nov. 18, 2015)............................................. 3, 12

*State v. Faford*,
  128 Wash. 2d 476, 910 P.2d 447 (1996).......................................... 24, 25, 26

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                          - vi -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*State v. Glant*,
13 Wash. App. 2d 356, 465 P.3d 382 (2020)..................................................23

*State v. Racus*,
7 Wash. App. 2d 287, 433 P.3d 830 (2019)....................................................23

*State v. Smith*,
189 Wash. 2d 655, 405 P.3d 997 (2017).........................................................23

*State v. Townsend*,
147 Wash. 2d 666, 57 P.3d 255 (2002)...........................................21, 22, 23, 25

*Stephens v. Omni Insurance Co.*,
138 Wash. App. 151, 159 P.3d 10 (2007).................................................38, 45

*Stiley v. Block*,
130 Wash. 2d 486, 925 P.2d 194 (1996).........................................................40

*Stuart v. Korey*,
2017 WL 1496360 (W.D. Wash. Apr. 26, 2017)...........................................13

*Svenson v. Google Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015)..................................................29

*Tallmadge v. Aurora Chrysler Plymouth, Inc.*,
25 Wash. App. 90, 605 P.2d 1275 (1979)......................................................47

*TekVisions, Inc. v. Hartford Cas. Ins. Co.*,
2017 WL 2574022 (W.D. Wash. June 13, 2017)...........................................11

*Teras Chartering, LLC v. Hyupjin Shipping Co.*,
2017 WL 3424960 (W.D. Wash. Aug. 9, 2017) ............................................17

*Theofel v. Farey-Jones*,
359 F.3d 1066 (9th Cir. 2004) .......................................................................33

*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021)......................................................................................51

*Valencia v. Volkswagen Grp. of America Inc.*,
2015 WL 4760707 (N.D. Cal. Aug. 11, 2015) ..............................................12

*Veridian Credit Union v. Eddie Bauer, LLC*,
295 F. Supp. 3d 1140 (W.D. Wash. 2017)......................................................10

*Vernon v. Qwest Commc'ns, Int'l, Inc.*,
643 F. Supp. 2d 1256 (W.D. Wash. 2009)...........................................39, 40, 41

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- vii -

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................ 39, 42

*Watkins v. L.M. Berry & Co.*,
   704 F.2d 577 (11th Cir. 1983) ................................................................................. 26

*Wilson v. Playtika, Ltd.*,
   349 F. Supp. 3d 1028 (W.D. Wash. 2018) ............................................................. 44

*Wilson v. PTT, LLC*,
   2021 WL 211532 (W.D. Wash. Jan. 21, 2021) ...................................................... 46

*Young v. Toyota Motor Sales, U.S.A.*,
   196 Wash. 2d 310, 472 P.3d 990 (2020) ............................................ 36, 37, 38, 40

**RULES**

Fed. R. Civ. P. 8(a) ...................................................................................................... 7

Fed. R. Civ. P. 9(b) ............................................................................................. passim

Fed. R. Civ. P. 12 ................................................................................................. 25, 36

**OTHER AUTHORITIES**

Restatement (Second) of Conflict of Laws ........................................................... 10, 12

Wright & Miller, 5C Federal Practice & Procedure (3d ed. 2004) .................................. 36

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- viii -

Plaintiffs Kaeli Garner, Mark Fladd, Stephanie Fladd, Jodi Brust, John Dannelly, Diane McNealy, Michael McNealy, Lisa Hovasse, Sandra Mirabile, Ricky Babani, Susan Lenehan, Jeffrey Hoyt, Lorlie Tesoriero, James Robinson, Rosa Comacho, Eric Dlugoss, Julie Dlugoss, Ronald Johnson, Selena Johnson, Caron Watkins, and Kelly Miller (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants Amazon.com, Inc. and Amazon.com Services LLC's (collectively, "Amazon" or "Defendants") Motion to Dismiss First Amended Consolidated Complaint (herein, "Motion" or "MTD") (ECF No. 63).

## I.   INTRODUCTION

It is undisputed that millions of people use Amazon's Alexa Devices in places where they have a reasonable expectation of privacy, such as their homes and cars.  People intentionally use Alexa to, *inter alia*, ask about the weather, set reminders, play music, purchase items, play games, and even ask about intimate conditions.  All persons expect that Alexa will only respond to a question or command if a "wake word," is used and that their prompt will only be temporarily processed in order for Alexa to generate a response.  In fact, Amazon explicitly assures that "[n]o audio is stored or sent to the cloud unless the device detects the wake word (or Alexa is activated by pressing a button)."  First Amended Consolidated Complaint ("FACC") (ECF No. 59) ¶¶ 12, 103.  Thus, unlike typing in a command on a keyboard, where an individual knows the content and the fact that the content is being transmitted, registrants and non-registrants anywhere in the vicinity of an Alexa Device can only rely on Amazon's say-so that Alexa does not activate until the user prompts Alexa with a wake word, and that no recordings will be stored, further transmitted, or disclosed even in the case of a "false wake."  However, Amazon's assurances are false.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 1 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   Unbeknownst to Plaintiffs, Alexa Devices surreptitiously record, intercept, transmit and

2   disclose private conversations that are not intended for Alexa Devices and do not include a wake

3   word.  For example, Plaintiffs were recorded by Alexa in their homes conversing about highly

4   sensitive topics ranging from confidential work communications, including one Plaintiff's work

5   as a City Prosecutor, to communications related to sexual intercourse.  FACC ¶¶ 70-73.  It goes

6   without saying that Amazon was never the intended recipient of these private and intimate

7   moments and was not authorized to store and transmit them.  Egregiously, these conversations

8   are stored permanently by Amazon and sent to third parties, including human listeners.  This is

9   not what Plaintiffs expect when they enter a building with an Alexa in it, even if Alexa is

10  intentionally called.  Amazon has since admitted that Alexa does not need to retain permanent

11  recordings or have human listeners process the conversations for Alexa Devices to function.

12  FACC ¶ 55.  Further, even a registrant's intentional interactions cannot be totally deleted, and are

13  transmitted to third parties before users even have the opportunity to review such recordings.

14  FACC ¶¶ 3, 52, 53.

15      To survive a motion to dismiss, a complaint need only state a claim to relief that is

16  plausible on its face.  The FACC easily satisfies this standard.  The FACC sufficiently alleges

17  that Amazon's use of its Alexa technology to surreptitiously intercept, eavesdrop, record, store,

18  disclose, transmit and/or use millions of individuals' words and conversations without their

19  knowledge or consent violates wiretapping laws of eight states.  The FACC also sufficiently

20  alleges that Amazon's conduct violates the Washington Consumer Protection Act ("WCPA"),

21  the Electronic Communications Privacy Act of 1986 ("Federal Wiretap Act" or "FWA"), and the

22  Stored Communications Act of 1986 ("SCA").  The FACC brings these claims on behalf of two

23  classes of Plaintiffs:  registered users and unregistered persons.  "Registered Plaintiffs" refers to

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 2 -

Byrnes ◆ Keller ◆ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Alexa Device users who set up the Alexa Device through the use of their Alexa App. "Unregistered Plaintiffs" refers to people who did not set up the Alexa Device, nor register it.

Defendants move to dismiss the FACC in its entirety.  However, Defendants' Motion is, in fact, only a partial motion to dismiss, because Defendants do not argue the sufficiency of the allegations that Amazon violates the wiretapping laws of Washington, California, Florida, Illinois, Maryland, Massachusetts, Michigan, New Hampshire, and Pennsylvania; thus, Defendants concede those claims.  Further, Defendants completely abandoned their argument that Plaintiffs' allegations first fail to adequately plead "illegal recording."  *Compare* Defendants' Motion to Dismiss Consolidated Complaint, at 8-10 (ECF No. 48), *to* Motion.  Defendants also barely address the Unregistered Plaintiffs' claims.  Putting aside whether the argument is preserved by the passing reference to Unregistered Plaintiffs, the argument fails on the merits as explained below.

Now, Defendants merely argue that: (1) Washington law governs the Registered Plaintiffs' claims because Registered Plaintiffs consented to Amazon's conditions of use; (2) Registered Plaintiffs consented to Alexa's recordings—and only the recordings—of their conversations; (3) Plaintiffs failed to sufficiently plead a violation of the FWA because Amazon was the intended recipient of the recorded conversations; (4) Plaintiffs failed to sufficiently plead a violation under the SCA; and (5) Plaintiffs failed to sufficiently plead a claim under the WCPA because the FACC does not plead unfair or deceptive acts and Plaintiffs suffered no injury to their business or property. Each argument fails.

*First*, it is premature at this stage to conduct a choice of law analysis as to which state's laws apply to the Registered Plaintiffs' claims.  *See*, *e.g.*, Sonner v. Schwabe N. Am., Inc., 2015 WL 13307076, at *8 (C.D. Cal. Nov. 18, 2015) (holding "[a] detailed choice-of-law analysis

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 3 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1  would be inappropriate" on a motion to strike).  Nevertheless, Plaintiffs agree that Washington

2  law applies to the Registered Plaintiffs' claims, but only on the basis of a preliminary choice of

3  law analysis.  *See* Argument § IV.A.1, *infra*.  However, this preliminary agreement does not

4  necessarily bar the statutory claims under the wiretap laws of California, Florida, Illinois,

5  Maryland, Massachusetts, Michigan, New Hampshire, and Pennsylvania, which the Court should

6  reserve judgment on until a later stage of the case.  *In re Facebook Biometric Information*

7  *Privacy Litig.*, 185 F. Supp. 3d 1155, 1170 (N.D. Cal. 2016) (holding that Illinois privacy statute

8  was not barred by choice of law clause).

9

10          ***Second***, Plaintiffs did not consent to Amazon's recording, storage, transmission and

11  disclosure of their private and intimate conversations where no wake word was used.  Even

12  assuming the Registered Plaintiffs were on notice of Amazon's various privacy notices and terms

13  of use (and they were not), these documents only set forth what occurs with ***interactions*** with

14  Alexa Devices (*i.e.*, conversations where the wake word is used).  These documents do not state

15  that non-interactions are also recorded, stored, transmitted, and disclosed, and in fact say that

16  non-interactions are ***not*** recorded, stored, transmitted, and disclosed.  Further, any argument

17  concerning the adequacy of the disclosures is a question of fact that cannot be resolved on a

18  motion to dismiss.  *See* Argument §§ IV.B.2.a-IV.B.2-b, *infra*.  And, in any event, such

19  arguments do not concern the Unregistered Plaintiffs, who had no access or ability to review and

20  consent to Amazon's terms.  *See* Argument § IV.B.1, *infra*.  Nor does Amazon's overly

21  expansive theory of "implied consent" (which has no basis in law) support a finding of consent.

22  *See* Argument § IV.B.3, *infra*.

23

24          ***Third***, the FACC sufficiently pleads a claim under the FWA.  Defendants are wrong that

25  all the conversations recorded by Alexa were intended for Defendants.  In fact, the FACC alleges

26

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 4 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

multiple examples of private conversations that were never intended for Defendants.  In addition, Defendants cannot plausibly argue that they were a party to conversations where no wake word was used.  *See* Argument § IV.C, *infra*.

**Fourth**, the FACC sufficiently pleads a claim under the SCA.  The FACC adequately alleges that (1) Amazon is an electronic communications service provider, (2) the Alexa recordings are in electronic storage for purposes of backup protection, and (3) Defendants divulged Plaintiffs' and Class members' communications to its workers and third-party contractors.  *See* Argument §§ IV.D.1-IV.D.3, *infra*.

**Finally**, the FACC sufficiently pleads a claim under the WCPA.  The FACC adequately alleges that Defendants committed "unfair or deceptive acts" by violating Plaintiffs' privacy rights and storing recordings permanently without Plaintiffs' consent.  The facts regarding Amazon's true recording practices extensively contrast with its purported COU and other alleged contracts.  *See* Argument §§ IV.E.1.a-IV.E.1.b, *infra*.  Plaintiffs also allege they were injured by paying more for the Alexa Devices than they would have had Amazon's true recording practices been disclosed, and that Plaintiffs were deprived of the value inherent with their personal data collected through the unconsented recordings by Amazon.  *See* Argument § IV.E.2, *infra*.

The Court should deny Defendants' Motion in its entirety.

## II.    SUMMARY OF THE COMPLAINT'S WELL-PLED FACTS

Amazon is responsible for developing the Alexa technology, which is a ubiquitous component of countless smart-home devices created by both Amazon and other manufacturers who license the technology. FACC ¶¶ 44, 46.  In advertisements for Alexa Devices, Defendants repeatedly state that communications will only be recorded and processed after a wake word is detected (*i.e.*, if a user says "Alexa" followed by a command), FACC ¶ 49, and that Alexa

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                           - 5 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Devices are not recording, storing, transmitting, and disclosing conversations where no wake word is used.  FACC ¶ 12.  These advertisements misrepresent the Alexa Device's secret capabilities.  In truth, Amazon employs technology in which Alexa is ***constantly*** listening to surrounding conversations, ostensibly for a wake word, rather than initiating listening after a wake word.  FACC ¶¶ 8, 45, 50, 87, 105.  The use of this technology is confirmed by Amazon's patent for "pre-wake word speech processing."  FACC ¶¶ 8, 50.[1]  Worse, Alexa devices are able to listen to conversations, unprompted, both inside and outside the room where the Alexa Device is located, due to Amazon's "far field technology."  FACC ¶¶ 6, 90.

Amazon does not adequately disclose two key business practices: (1) that recordings are permanently stored (including private communications not intended for Alexa); and (2) that Amazon utilizes human listeners to review individual recordings transmitted to them.  FACC ¶¶ 3, 53, 87.  Surveys of smart-home device users affirmatively demonstrate that people are unaware of Amazon's permanent storage and human listening practices.  *Id.*  These business practices are not inherent to Alexa's functionality.  For example, Amazon designs Alexa Devices, specifically for senior living centers and the healthcare industry that do not save or share any recordings, meaning Alexa Devices can function without permanent storage and disclosure of recordings.  FACC ¶¶ 54-55.

Amazon's recording, storage, transmission, and disclosure practices are an invasion of Plaintiffs' privacy and violate the wiretapping laws of eight states, the FWA, the SCA, and the WCPA.  There are countless examples of Amazon's surreptitious interception of Plaintiffs' intimate conversations, including conversations between a husband and wife in their home about

---

[1] Amazon's patent application undercuts its argument that constantly listening, recording, storing, transmitting, and re-publishing words and conversations have no commercial value.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 6 -

Byrnes ◆ Keller ◆ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

sexual intercourse, FACC ¶ 70, conversations in which a City Prosecutor discussed sensitive

information concerning legal matters while working from home, FACC ¶ 72, and conversations

between a husband and wife concerning medical treatment.  FACC ¶ 68.[2]  An Alexa device even

captured a recording of named Plaintiff, Jodi Brust, saying "Hey Google," a wake word for a

***completely different*** smart-home device.  FACC ¶ 74.  All of these recordings were illegally

stored, transmitted, and disclosed despite the fact that Amazon's various privacy policies and

conditions of use represent that recordings where no wake word is used will not be recorded,

stored, transmitted, and disclosed.  FACC ¶ 85.  Indeed, Amazon is fully aware of what its Alexa

Devices are doing, as when these "non-interactions" are recorded, stored, transmitted, and

disclosed, they are listed as "Audio Not Intended For Alexa."  *Id*.  Thus, not only does Amazon

misrepresent what its Alexa Devices are collecting, storing, transmitting, and disclosing, it is

fully aware of the scope of recordings that its Alexa Devices are collecting, storing, and

disclosing.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain a "short

and plain statement of the claim showing that the pleader is entitled to relief."  A motion to

dismiss should be denied where the complaint contains "sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face."  *Somers v. Apple, Inc.*, 729 F.3d 953,

959 (9th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).  A claim is facially plausible

"when the plaintiff pleads factual content that allows the court to draw the reasonable inference

---

[2] Non-registrants whose words and conversations were surreptitiously recorded are not authorized to access Alexa accounts, much less delete stored content, so examples of these recordings necessarily could only be alleged if a Registered Plaintiff was also a party to the conversations.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 7 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

that the defendant is liable for the misconduct alleged." *Id.* Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

The Court must assume all factual allegations in the complaint as true and construe all allegations in the light most favorable to Plaintiffs. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020); *Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003). A complaint is proper, and a motion to dismiss should be denied, *even if* the proof of "facts is improbable" or "recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## IV.   ARGUMENT

### A.   The Court Should Not Dismiss The Registered Plaintiffs' Non-Washington Wiretapping Claims

Amazon asserts that, as to the Registered Plaintiffs, "[t]he parties' explicit choice of Washington law in the COUs compels dismissal of any claim under another state's law." MTD at 10:27-28. Importantly, Defendants do not make the same argument for Unregistered Plaintiffs, nor can they, and so have forfeited this argument on reply. *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1063 (E.D. Wash. 2013) ("[A] party may not raise new legal issues for the first time in its reply brief.").[3]

---

[3] While, as Amazon admits, the question is not before the Court, the Unregistered Plaintiffs are not bound by the terms of an agreement they are not a party to, concerning a device that they did not purchase, and overseeing recorded conversations of which they were unaware. *See* MTD at 22 n.6. The general rule is that a non-signatory to an agreement cannot be bound by its terms. *See Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1165 (9th Cir. 1996) ("A choice-of-law clause, like an arbitration clause, is a contractual right and generally may not be invoked by one who is not a party to the contract in which it appears.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 8 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

With respect to the Registered Plaintiffs, the Registered Plaintiffs have brought their claims under Washington law, asserting individual state law claims in the alternative.  While Plaintiffs agree, for the purposes of this motion, that Washington law should apply to the Registered Plaintiffs' claims, it is not because of any assent to the COU's contractual choice of law provision, as Amazon claims.  Rather, it is because, preliminarily, under Washington's "most significant relationship" test to determine which states' laws should apply, Washington would likely apply its laws to the Registered Plaintiffs' claims.

However, as discussed below, it is premature to make a full choice of law determination because the most significant relationship test is a fact-intensive inquiry that requires discovery. FACC Ex. A, at 8.  Therefore, while the Court should apply Washington law to the Registered Plaintiffs' claims for the purposes of this motion, Registered Plaintiffs' alternative claims should not be dismissed because, depending on discovery, it is possible that Washington's choice of law analysis applied to a full factual record would apply Registered Plaintiffs' home state laws.

### 1. Washington Law Likely Applies to the Registered Users' Claims Under Washington's Choice of Law Rules.

Amazon's COU contains a choice-of-law provision that requires the application of Washington law to any dispute between the parties.  FACC Ex. A.  Citing that provision, Amazon contends that Washington law applies to the Registered Users' claims.  MTD at 10:27-28.  Plaintiffs do not concede that they are bound by the COU because, among other things, this dispute concerns conduct taken outside the four corners of the COU.  Specifically, Registered Plaintiffs allege that Amazon surreptitiously recorded, stored, transmitted, and disclosed recordings not intended for Alexa to hear, which is outside any purported agreement with Amazon.  *See* Argument § IV.B.2.b, *infra*.  And, as this Court has held, "[c]laims arising in tort are not ordinarily controlled by a contractual choice of law provision but are instead decided

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                           - 9 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

according to the law of the forum state." *Mikron Industries, Inc.*, 2007 WL 3033933, at *2 (Lasnik, J.).  However, Plaintiffs preliminarily agree Washington law applies at this stage because Washington's choice of law rules will likely apply Washington law to the Registered Plaintiffs' claims.

"Washington's choice of law analysis follows the general principles enunciated in the Restatement (Second) of Conflict of Laws § 6 and § 145." *Brutscher v. GEICO General Ins. Co.*, 2014 WL 7340724, at *2 (W.D. Wash. Dec. 22, 2014) (Lasnik, J.).  Under that analysis, where state laws conflict, the Court must evaluate "the interests and public policies of potentially concerned jurisdictions." *Id.*  In determining the state with the most significant relationship to the occurrence and the parties, the court considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1175-76 (W.D. Wash. 2006).

In Washington, "[w]hen the injury occurs in two or more states or the location of the injury is fortuitous, the weight the court gives to the place where the alleged conduct causing the injury occurred increased." *Veridian Credit Union v. Eddie Bauer, LLC*, 295 F. Supp. 3d 1140, 1153 (W.D. Wash. 2017) (citing Restatement (Second) of Conflicts of Laws § 145, cmt. e (1971) ("When the injury occurred in two or more states, or when the place of injury cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law.")); *Kelley v. Microsoft*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                   - 10 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Corp.*, 251 F.R.D. 544, 552 (W.D. Wash. 2008) ("[B]ecause the place of the injury is fortuitous the Court gives greater weight to Washington, the location of the source of the injury.").

Here, the injury-causing conduct occurred in Washington, where Amazon is located, and the location of the injury was fortuitous.  Specifically, Amazon, which is headquartered in Washington, designed, marketed, and sold the Alexa Devices to record, transmit, and send conversations, even those not intended for Alexa to hear, so that Amazon and its employees and agents may listen and analyze these recordings.  That activity was intentional and orchestrated from Washington.

Conversely, the place of injury was fortuitous and spread across numerous states. Amazon has sold millions of Alexa Devices throughout the United States.  The location of the Alexa Devices depended on where they happened to be purchased and where the users happened to reside.  Because the devices traveled with their owners, they may have crossed state lines numerous times, including those Alexa Devices that were installed on phones.  Thus, the surreptitious recordings occurred throughout the country.

Consequently and preliminarily, Washington law is likely to apply to the Registered Plaintiffs' claims.

### 2.    The Court Should Not Dismiss Plaintiffs' Alternative State Law Claims

While Plaintiffs preliminarily agree that Washington law should apply to the Registered Plaintiffs' claims at this stage and for the purposes of this motion, it would be premature to perform a full blown choice of law analysis.  *See*, *e.g.*, *Mikron Industries, Inc.*, 2007 3033933, at *2 (Lasnik, J.) ("[T]he record is insufficiently developed to provide the necessary facts to permit the Court to conduct a choice of law analysis.  Accordingly, the Court finds that a conflict of law analysis would be premature at this point in the proceedings.").  *TekVisions, Inc. v. Hartford Cas.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                              - 11 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Ins. Co.*, 2017 WL 2574022, at *2 (W.D. Wash. June 13, 2017) ("The Court agrees with Hartford that engaging in a choice of law analysis would be premature, as the relevant legal analysis requires determining whether Washington or California has the most significant relationship to the conflict and parties.  This analysis requires further development of the record."); *In re Clorox Consumer Litigation*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012) ("Since the parties have yet to develop a factual record, it is unclear whether applying different state consumer protection statutes could have a material impact on the viability of Plaintiffs claims."); *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) ("[I]t would be premature to speculate about whether the difference in various states' consumer protection laws are material in this case."); *Sonner v. Schwabe N. Am., Inc.*, 2015 WL 13307076, at *8 (C.D. Cal. Nov. 18, 2015) ("A detailed choice-of-law analysis would be inappropriate" on a motion to strike; *Valencia v. Volkswagen Grp. of America Inc.*, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) ("Whether California law differs from the laws of other states in a way that is material *to this litigation* is not a proper inquiry at the pleading stage.") (emphasis in original); *Corbett v. Pharmacare U.S., Inc.*, --- F. Supp. 3d ---, 2021 WL 2473950, at *11 (S.D. Cal. June 17, 2021) (denying motion to dismiss nationwide class allegations based on choice of law).  That is because the choice of law analysis is a fact-intensive inquiry that often relies on discovery. *See, e.g.*, *Kornfeind v. New Werner Holding Co.*, 241 A.3d 1212, 1228 (Pa. Sup. Ct. 2020) (holding that factual findings, including the locations of a defective device's design and the state where it was manufactured would have implications on the choice of law analysis under Restatement (Second) Restatement, § 145), *appeal granted*, 2021 WL 4540247 (Pa. Oct. 5, 2021).  And the need for further factual development is clear here, given Amazon's lack of evaluation of the respective states' interests.  MTD at 20-21.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - 12 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Therefore, while Plaintiffs preliminarily agree that Washington law will likely apply to the Registered Plaintiffs' claims and should apply for the purpose of this motion, discovery may show a different result is appropriate.  As such, the Court should not dismiss the Registered Plaintiffs' alternative state law claims.

**B.      Plaintiffs Did Not Consent To Being Wiretapped By Their Alexa Devices**

Defendants argue that all Plaintiffs either expressly or implicitly consented to Amazon's surreptitious recordings of their private conversations.  MTD at 22-31.  "The party seeking to establish consent has the burden of proof." *Lopez v. Apple, Inc.*, 519 F. Supp. 3d 672, 685 (N.D. Cal. 2021) ("*Lopez I*").  Defendants have not met their burden here.

**1.      The Unregistered Plaintiffs Did Not Expressly Consent To Being Wiretapped By Alexa**

Importantly, Amazon does not argue that the Unregistered Plaintiffs expressly consented to Alexa's recordings, nor can they.  Like the Registered Plaintiffs, there is no basis to conclude the Unregistered Plaintiffs consented to have the instances they did not intend to communicate with Alexa (*i.e.*, non-interactions) recorded, stored, transmitted, and disclosed.  But even as to their intentional interactions with Alexa, Amazon cannot argue the Unregistered Plaintiffs consented to having such interactions recorded, stored, transmitted, and disclosed.  As unregistered users to the Alexa Devices, the Unregistered Plaintiffs did not agree, and could not have agreed, to any terms by which they consented to having any of their communications recorded, stored, transmitted, and disclosed.  *See Stuart v. Korey*, 2017 WL 1496360, at *3 (W.D. Wash. Apr. 26, 2017) (noting "the general rule that parties cannot be required to submit to a contract to which they have not agreed").  Indeed, each Alexa Terms of Use registration agreement Amazon references binds "You," which is defined as a single person—the

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                       - 13 -

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   registrant—and not anyone else.  Thus, no Unregistered Plaintiff explicitly consented to having

2   their interactions or non-interactions recorded, stored, transmitted, and disclosed by Alexa.

### 2.   The Registered Plaintiffs Did Not Expressly Consent To Being Wiretapped By Alexa

5   Defendants argue that "[t]he fact that registered users provide consent, through their

6   participation in the Alexa activation process and agreement to the terms governing Alexa,

7   independently defeats their claims."  MTD at 22:14-15.  Defendants' argument fails because

8   (1) with regard to Plaintiffs' Washington wiretapping claim, Amazon failed to notify Plaintiffs

9   each and every time it recorded a communication, as it was statutorily required to do; and (2)

10   Amazon's various privacy notices and terms of use (the COU, the Alexa Terms of Use, the

11   Alexa Privacy Notice, and the Alexa FAQs) never informed Registered Plaintiffs that their

12   private conversations not intended for Alexa Devices and where a wake word is never used

13   would be recorded, stored, transmitted, and disclosed.

a.   *The Alexa Devices Did Not Properly Notify Plaintiffs That They Were Being Recorded Under Washington Law*

17   As to the Registered Plaintiffs' Washington claims, Amazon substitutes general laws on

18   click-through and wrap agreements in support of its argument that all registered users have

19   consented.  *See generally* MTD at 23:4-24:11.  In actuality, the Washington Code requires notice

20   and agreement for ***each recorded conversation***.  RCW 9.73.030(3) ("Where consent by all

21   parties is needed pursuant to this chapter, consent shall be considered obtained whenever one

22   party has announced to all other parties engaged in the communication or conversation, in any

23   reasonably effective manner, that such communication or conversation is about to be recorded or

24   transmitted.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 14 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

In other words, the Washington Wiretap Act requires a conversation-by-conversation opt in requirement.  The announcement allows a user about to be recorded to understand they are about to be recorded, and provides the user the choice to end or continue the conversation.[4] Setting aside that Amazon does not even allow an opt out provision in its cited terms and conditions, no such option to continue a conversation or not is given to even Registered Plaintiffs. Specifically, as to allegations that conversations were surreptitiously recorded, no such statutory announcement, recorded or otherwise took place.  Nor has Amazon demonstrated that Plaintiffs "observed activation in every instance, or that recording did not take place prior to [Plaintiffs'] observation," as the Washington Wiretap Act requires.  *Lopez v. Apple, Inc.*, --- F. Supp. 3d ---, 2021 WL 4059106, at *4 (N.D. Cal. Sept. 2, 2021) ("*Lopez II*").  Accordingly, Amazon has not demonstrated that Plaintiffs were properly alerted that they were about to be or were being recorded so as to establish consent under Washington law.

> b.     *The Privacy Notice Does Not Disclose That Registered Plaintiffs' Private Conversations Not Intended For Alexa Would Be Recorded, Stored, And Disclosed By Defendants*

Amazon argues the Registered Plaintiffs consented to having their voices recorded, stored, transmitted, and disclosed because "the Alexa Terms, which are incorporated into the COUs, make clear that Amazon retains voice recordings and also link to additional information about how users can access and delete their voice recordings."  MTD at 24:13-15.  Defendants' argument misses the mark because it focuses on ***intentional*** interactions with the Alexa devices, where users direct their questions and commands at Alexa Devices and prompt Alexa with a wake word.  Here, however, Plaintiffs allege that Alexa recorded, stored, transmitted, and

---

[4] The statutory notice requirement is not onerous. It is now ubiquitous, such as when one calls a customer service line and is informed that all or parts of the conversation may be recorded.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                              - 15 -

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

disclosed situations where Plaintiffs ***did not communicate with Alexa*** (*i.e.*, non-interactions or conversations that were not intended for Alexa and do not include a wake word), which Amazon's myriad legal documents do not disclose.  In fact, Amazon explicitly states that Alexa Devices do not record, store, transmit, and disclose communications "unless the device detects the wake word."  FACC ¶¶ 12, 103.  It strains credulity for Amazon to argue that Plaintiffs could consent to something that Amazon claims in the COU, the Alexa Terms of Use, the Alexa Privacy Notice, and the Alexa FAQs does not occur.[5]

        "[C]onsent is only effective if the person alleging harm consented to the particular conduct, or to substantially the same conduct, and if the alleged tortfeasor did not exceed the scope of that consent." *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1072-73 (N.D. Cal. 2016); *see also In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at *12 (N.D. Cal. Sept. 26, 2013) ("[C]onsent is not an all-or-nothing proposition.  Rather, a party may consent to the interception of only part of a communication or to the interception of only a subset of its communications.") (internal quotations omitted).  If there is a dispute over whether a privacy policy adequately discloses the conduct at issue, that is typically a question of fact that cannot be resolved on the pleadings.  *See Opperman*, 205 F. Supp. 3d at 1074 (holding that "a reasonable jury could find that Yelp's Privacy Policy provisions do not explicitly address—and thus do not obtain knowing consent for—the uploading of a user's address book data for the purpose of finding friends who are already registered Yelp users"); *McCoy v. Alphabet, Inc.*, 2021 WL 405816, at *6 (N.D. Cal. Feb. 2, 2021) ("At the motion to dismiss stage, the Court is not prepared to rule that the Privacy

---

[5] Amazon seems to suggest that since it had no subjective intent, then that absolves it of liability. However, for purposes of this motion to dismiss, Amazon's argument is an admission that words and conversations were recorded, stored, transmitted, and disclosed.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - 16 -

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Policy establishes an absolute bar to Plaintiff's claims.").  Further, it is black letter law that if a contract is ambiguous, it is to be construed "against the party that drew it."  *Teras Chartering, LLC v. Hyupjin Shipping Co.*, 2017 WL 3424960, at *5 (W.D. Wash. Aug. 9, 2017) (collecting cases).  And, as noted above, it is Amazon's burden to establish consent.  *Lopez I*, 519 F. Supp. 3d at 685.

Here, Amazon has failed to establish that any of its purported terms disclosed that Plaintiffs' non-interactions with Alexa would be recorded, stored, transmitted, and disclosed, much less disclosed in conformance with Washington law.  As an initial matter, Amazon proffers the Alexa Terms of Use from September 2021 and FAQs from December 2021 (*i.e.*, ***after*** this lawsuit was filed and ***after*** a number of the Plaintiffs ceased using their Alexa devices).  *See* RJN Exs. A-C.  Without disclosing what the Alexa Terms of Use and FAQs said at the times that Plaintiffs actually registered or used their Alexa devices (and certainly before this lawsuit was filed), it is impossible to conclude what terms the Registered Plaintiffs may have consented to and when.  For this reason alone, the Court should reject Defendants' "consent" argument.  *See Berman v. Freedom Fin. Network, LLC*, 2020 WL 5210912, at *3 (N.D. Cal. Sept. 1, 2020) ("As a preliminary matter, an evidentiary dispute exists as to whether the webpage screenshots offered by defendants in support of their motion evidenced an agreement with either plaintiff."); *see also* FACC ¶ 88 (noting that the Alexa Terms of Use prior to November 2020 differ from current terms in that Amazon previously claimed it only "streams" user's voices to the cloud for processing, rather than now disclosing it "records" audio and sends it to the cloud).

Even if the former and current Amazon COU, Alexa Terms of Use, Privacy Notice, and FAQs do not materially differ (and they do, substantially), Amazon still cannot demonstrate that the Registered Plaintiffs consented to have their non-interactions with their Alexa Devices

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                           - 17 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

recorded, stored, transmitted, and disclosed.  As to the Alexa Terms of Use[6] (which Defendants

have selectively and improperly highlighted), Amazon cites a passage stating that "Alexa records

and sends audio to the cloud ***when you interact with Alexa***" and that "Amazon processes

and retains ***your Alexa Interactions***."  RJN Ex. B § 1.3 (emphasis added).  Again, these speak

only to Plaintiffs' intentional interactions with Alexa, not to the myriad times when Plaintiffs

were not interacting with Alexa but had their conversations recorded, stored, transmitted, and

disclosed anyway.  FACC ¶¶ 59-86 (examples of non-interactions with Alexa being recorded,

stored, and disclosed where no wake word was used).  Furthermore, Amazon regularly changes

its disclosures and terms after a registered user completes the Alexa registration process. FACC ¶

93.  Amazon's selective submission of and citation to only the contract terms outside the

pleadings it believes help its case is deceptive, at best.[7]

The FAQs fare no better.  In fact, the FAQs explicitly state that Alexa ***does not*** record,

store, transmit, or disclose conversations where no wake work is used.  *See*, *e.g.*, RJN Ex. A ("2.

Is Alexa recording all of my conversations?  ***No …*** Echo devices are designed to detect only

your chosen wake word … ***No audio is stored or sent to the cloud unless the device detects the***

***wake word***.") (emphasis added); *id.* ("4. How does Alexa minimize the amount of data sent to

the cloud? … ***Alexa-enabled devices only stream audio to the cloud if the wake word is***

---

[6] Defendants claim the Alexa Terms of Use "are incorporated into the COUs."  MTD at 24:13-14.
They are not.  The Amazon COUs do not mention the Alexa Terms of Use, let alone Alexa at all.
*See* FACC Ex. A. And the Alexa Terms of Use reference the COUs as a separate document, not
that a user agrees to the COUs by also agreeing to the Alexa Terms of Use.  *See*, *e.g.*, RJN Ex. B
§ 1.2 ("For ***additional terms*** that apply to the Software, see the software terms contained in the
Amazon.com Conditions of Use") (emphasis added).

[7] Plaintiffs have simultaneously filed an Opposition to Amazon's Request for Judicial Notice on
this basis.  Plaintiffs also argue that to the extent the documents are considered, the writings are
not deemed established facts.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 18 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*detected*.") (emphasis added); RJN Ex. C, at p. 1 (same).  Even in the "false wakes" section of the FAQS—which Amazon (falsely) claims only occur in instances such as "the name 'Alex' or someone saying 'Alexa' on the radio or television" (RJN Ex. A, at FAQ 5)—Amazon claims that conversations are recorded and streamed to the cloud "[a]nytime your Echo device *detects the wake word*."  RJN Ex. A, at 5 (emphasis added).  Yet, as Plaintiffs have alleged, Alexa constantly records, stores, transmits, and discloses conversations where no wake word was used (or anything close to it), and indeed, where Alexa knows no wake word was detected and the audio was not intended for the device.  FACC ¶¶ 59-86.

Finally, the Privacy Notice is not dispositive.  Again, the Privacy Notice discusses what occurs when a user intentionally communicates with an Alexa device.  *See, e.g.*, FACC Ex. B, at 2 (Amazon "receive[s] and store[s] any information *you provide* in relation to Amazon Services") (emphasis added); *id.* at 3 ("When *you use* our voice, image and camera services, we use your voice input, images, videos, and other personal information to respond to your requests") (emphasis added); *id.* at 10 ("You provide information to us when you … *talk to or otherwise interact with* our Alexa Voice service") (emphasis added); *id.* at 11-12 ("As a result of those actions, you might supply us with such information as … voice recordings *when you speak to Alexa*") (emphasis added).  The Privacy Notice does not inform users that their non-interactions are also being recorded, stored, or disclosed.

In short, regardless of whether the Registered Plaintiffs consented to have their *interactions* with Alexa recorded, stored, transmitted, and disclosed (and they did not for the reasons set forth in Argument § IV.B.2.a, *supra*), Amazon has not and cannot demonstrate the same as to Registered Plaintiffs' *non-interactions*.  *See, e.g.*, *Lopez I*, 519 F. Supp. 3d at 685 (no consent to wiretapping by smart-home device where "[e]ven if Plaintiffs consented to use Siri

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- 19 -

generally, they allege that their consent was limited to situations where a hot word was spoken"
and Software License Agreement did not disclose aggrieved of conduct); *In re Google Inc.*, 2013
WL 5423918, at *13 ("Section 8 of the Terms of Service suggests that content may be
intercepted under a different set of circumstances for a different purpose—to exclude
objectionable content, such as sexual material. This does not suggest to the user that Google
would intercept emails for the purposes of creating user profiles or providing targeted
advertising."); *Opperman*, 205 F. Supp. 3d at 1074 (no consent where "it is unclear whether the
language in the relevant Privacy Policy provisions even applies to the Friend Finder function at
issue in this lawsuit."); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848 (N.D. Cal. 2014)
("[A]ny consent with respect to the processing and sending of messages itself does not
necessarily constitute consent to the specific practice alleged in this case—that is, the scanning
of message content for use in targeted advertising."); *McCoy*, 2021 WL 405816, at *6 (no
consent where statements in a privacy policy "may not be understood by a reasonable user to
disclose collection of her usage information on an independent third-party app."); *In re Google
Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 824 (N.D. Cal. 2020) ("*Google Assistant I*") (no
consent where "although users may have consented to Google's **collection** of their data … that
consent does not reasonably extend to **disclosure** of data") (emphasis in original).[8]

---

[8] At the very least, the various legal documents are ambiguous enough that there is a question of
fact as to whether the Registered Plaintiffs consented to having their non-interactions recorded,
stored, and disclosed by their Alexa devices. *In re Facebook, Inc. Consumer Privacy User Profile
Litig.*, 402 F. Supp. 3d 767, 789 (N.D. Cal. 2019) (holding if "the contract language at issue is
reasonably susceptible to more than one interpretation, with one of those interpretations suggesting
consent and another belying it, the Court cannot decide the consent issue in Defendant's favor at
the motion to dismiss stage").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL       - 20 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

3.     **No Plaintiff Impliedly Consented To Being Wiretapped By Alexa**

Finally, Amazon argues that "all of the Plaintiffs (registrants and non-registrants alike) also impliedly consented to voice recordings under Washington law." MTD at 27:7-9.[9]  This is not true.

An overview of *State v. Townsend*, 147 Wash. 2d 666, 57 P.3d 255 (2002), on which Amazon heavily relies and which serves as the basis for its "implied consent" theory, bears mentioning.  In *Townsend*, a detective "set up a 'sting operation' whereby he established a 'Hotmail' Internet e-mail account with a screen name of 'ambergirl87' (Amber), a fictitious 13-year-old girl," to communicate with Townsend, a suspected sex offender.  *Townsend*, 147 Wash. 2d at 670.  Later, "Detective Keller, under the guise of Amber, 'set up' an ICQ account … ICQ is an Internet discussion software program that allows users to communicate across the Internet to chat freely almost as if you were talking on the phone but typing on the keyboard."  *Id.* "Keller's ICQ program was 'defaulted' to automatically record the ICQ messages he received." *Id.* at 671.  Based on messages he sent to "Amber," Townsend was arrested, but he "moved to dismiss the charge, arguing, among other things, that Keller's recording and printing of his private e-mail and ICQ communications violated Washington's privacy act."  *Id.*

The Washington Supreme Court held that the Washington wiretapping act "was not violated because Townsend impliedly consented to the recording of his e-mail and ICQ communications."  *Id.* at 669-70.  As to the e-mails, the court concluded that "in order for e-mail

---

[9] Defendants make the assumption that only claims based in Washington law may be pursued, and therefore, that Washington's stance on implied consent governs such claims.  However, as demonstrated by Plaintiffs, Washington law does not bar Plaintiffs' non-Washington claims.  *See* Argument § IV.A, *supra*.  And, Defendants have not argued that implied consent bars Plaintiffs' claims under any other wiretapping statute.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 21 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

to be useful it must be recorded by the receiving computer." *Id.* at 676; *see also id.* ("Like a person who leaves a message on a telephone answering machine, a person who sends an e-mail message anticipates that it will be recorded.  That person thus implicitly consents to having the message recorded on the ***addressee's*** computer.") (emphasis added).  Thus, "because Townsend, as a user of e-mail, had to understand that computers are, among other things, a message recording device and that his e-mail messages would be recorded on the computer of the person ***to whom the message was sent***, he is properly deemed to have consented to the recording of those messages." *Id.* (emphasis added)

As to the ICQ communications, the court concluded Townsend impliedly consented to having his ICQ communications recorded because "Townsend's ICQ contained a privacy policy that specifically warned users that some versions of the software allow any party to an ICQ session to record the content of the session and that the ICQ program default in some versions is set to record message and other event dialog and traffic." *Id.* at 677 (internal quotations omitted).  "In addition, the ICQ Software privacy policy warned users against use of ICQ Software for Content Sensitive applications and purposes and advised them that if they wish not to be exposed to these risks, they should not use the software. *Id.* (internal quotations omitted). Further, the court inferred that Townsend was familiar with the ICQ technology because he "encouraged the recipient of his ICQ messages, the fictitious Amber, to set up an ICQ account." *Id*.  Based on these facts, the court concluded that Townsend impliedly consented to having his ICQ messages recorded as well.

The holding of *Townsend* is therefore straightforward and limited:  Townsend impliedly consented to the recording because: (1) ***the recipient*** of his e-mails had to record them by virtue of the functionality of e-mail (like an answering machine); and (2) the ICQ privacy policy

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 22 -

Byrnes ◆ Keller ◆ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

explicitly disclosed that Townsend's messages allowed recording, and Townsend was assumed to be familiar with privacy policy by virtue of being familiar with the software.  Amazon, by contrast, seeks to expand the holding of *Townsend* beyond the facts of the case, an interpretation that is not supported—and indeed, has been rejected—by caselaw.

  ***First***, it does not matter if "recording is an inherent part of Alexa's function" (MTD at 30:1-2) because Plaintiffs allege they did not communicate with Alexa in the case of their non-interactions, and that there was no reason for Alexa to function at all under these circumstances. Unlike *Townsend*, all Plaintiffs allege that Alexa recorded, stored, transmitted, and disclosed communications that were not intended for Alexa (*i.e.*, where Alexa was not the recipient of the communications).  FACC ¶¶ 59-86.  Thus, unlike the e-mails in *Townsend* (where Townsend had to have known ***the recipient*** of the e-mails would record them), there is no basis to conclude that non-interactions with Alexa would be recorded, stored, transmitted, and disclosed.[10]  *Townsend*,

---

[10] These facts distinguish this case from Amazon's other cited authorities, which involve situations where the recorded party intended to communicate with another person, and the other person was the intended recipient of the communication.  *See State v. Glant*, 13 Wash. App. 2d 356, 361, 465 P.3d 382 (2020) (consent to recording where "Glant responded to the advertisement by e-mail" and "Glant then began texting with a person whom he believed was Hannah, a mother of three children"); *id.* at 365 ("When a person sends e-mail or text messages they do so with the understanding that the messages would be available to the ***receiving party*** for reading or printing.") (emphasis added); *State v. Racus*, 7 Wash. App. 2d 287, 300, 433 P.3d 830 (2019) (consent to recording where "the pre-intercept communications sent by Racus to 'Kristl' were communications made by Racus in response to an advertisement in the casual encounters section of Craigslist"); *State v. Smith*, 189 Wash. 2d 655, 666, 405 P.3d 997 (2017) (consent because party "call[ed] his cell phone in order to locate it" and therefore "took the risk that his call would trigger the recording (voice mail) function"); *In re Marriage of Farr*, 87 Wash. App. 177, 184, 940 P.2d 679 (1997) (consent to recording where father intentionally left messages for child—the intended recipient—"on an answering machine").  By contrast, Plaintiffs here did not intend to communicate with their Alexa devices in the case of their non-interactions, and Alexa was not the intended recipient of these communications. Thus, there was no reason for Alexa to record, store, and disclose Plaintiffs' non-interactions, and the recording of such non-interactions is not part of Alexa's "inherent" functionality.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 23 -

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

57 P.3d at 261 (distinguishing situation where "communications over a cordless telephone []
were intercepted by someone who was not a party to the telephone conversations" because
"[t]here was no suggestion there that the communicators had either consented to the
communications being recorded or advised that they might be recorded") (citing *State v. Faford*,
128 Wash. 2d 476, 910 P.2d 447 (1996)); *see also In re Google Inc.*, 2013 WL 5423918, at *14
("Google's theory is that all email users understand and accept the fact that email is
automatically processed.  However, the cases Google cites for this far-reaching proposition hold
only that the sender of an email consents to the intended recipients' recording of the email—***not,
as has been alleged here, interception by a third-party service provider***.") (emphasis added).
And unlike the ICQ communications, in addition to Alexa not being a party to the
communications, Defendants' various legal documents did not disclose that the non-interactions
would be recorded, stored, transmitted, and disclosed.  Indeed, the documents said such
communications ***would not*** be recorded, stored, transmitted, and disclosed.  *See* Argument §
IV.B.2.a, *supra*.

 ***Second***, Amazon did not communicate in a "reasonably effective manner" that Plaintiffs'
non-interactions with their Alexa devices would be recorded, stored, transmitted, and disclosed.
Again, Defendants' various legal documents do not disclose that the non-interactions would be
recorded, stored, transmitted and disclosed.  Indeed, the documents said such communications
***would not*** be recorded, stored, transmitted, and disclosed.  *See* Argument § IV.B.2.b, *supra*.
Further, under Washington law, Amazon was required to notify Plaintiffs each and every time an
Alexa Device recorded an interaction, which it failed to do.  Argument § IV.B.2.a, *supra*.

 Defendants then pivot to various hearsay-laden news articles "discuss[ing] that Alexa
devices send users' voice commands to the cloud for processing, where they are recorded," or

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- 24 -

the existence of "false wakes."  MTD at 28:4-7, 29:2-3.  As an initial matter, what news articles

Plaintiffs may have seen—which depend on what publications they subscribe to or have access

to, what was sent to them by friends and family, etc.—is a question of fact that cannot be

resolved on a motion to dismiss.  *See Pierce v. NovaStar Mortg., Inc.*, 422 F. Supp. 2d 1230,

1237 (W.D. Wash. 2006) ("[T]he extent of Cameron Pierce's knowledge and expertise is a

question of fact, and does not belong in a Fed. R. Civ. P. 12(b)(6) motion to dismiss.").  The

articles are also a far cry from the privacy policy in *Townsend* and should be rejected as an

overly expansive interpretation of that holding.  Further, the articles are not dispositive.  As to

the articles discussing the recording of interactions with Alexa devices, the articles discuss just

that: ***interactions*** with Alexa devices, not the myriad non-interactions alleged in the complaint.

And as to the publication of articles relating to "false wakes," these articles do not disclose that

"false wakes" or non-interactions are recorded, stored, transmitted, and disclosed (something

that, again, Amazon claims in the COU, the Alexa Terms of Use, the Alexa Privacy Notice, and

the Alexa FAQs does not happen).

Moreover, Amazon's theory finds no support in caselaw.  In *Faford*, the prosecution

made an analogous argument that "because the technology exists to intercept cordless telephone

conversations with ease, society does not reasonably expect privacy in those calls."  128 Wash.

2d at 485.  The Washington Supreme Court rejected this theory:

> As we have repeatedly emphasized in considering constitutional privacy
> protections, the mere possibility that intrusion on otherwise private activities is
> technologically feasible will not strip citizens of their privacy rights.

> We recognize as technology races ahead with ever increasing speed, our
> subjective expectations of privacy may be unconsciously altered. Our right to
> privacy may be eroded without our awareness, much less our consent. We
> believe our legal right to privacy should reflect thoughtful and purposeful
> choices rather than simply mirror the current state of the commercial technology

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                 - 25 -

Byrnes ◆ Keller ◆ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

industry.  At the same time, a privacy right that is defined by a particular level of technological sophistication is administratively unworkable.

*Id.* (internal citations omitted); *see also Lopez I*, 519 F. Supp. 3d at 685 ("[T]he allegations that Plaintiffs understand how voice assistants generally work and that Siri activates based on a 'confidence score' are insufficient to show that Plaintiffs consented to being recorded after a 'sound of a zip.'"); *see also Watkins v. L.M. Berry & Co.*, 704 F.2d 577, 581 (11th Cir. 1983) ("It would thwart th[e] policy [of protecting privacy] if consent could routinely be implied from circumstances.").

**Finally**, the fact that an Alexa Device may activate due to a "false wake" (MTD at 5:25-28) does not support implied consent, because there Plaintiffs do not allege they observed or heard the Alexa Device activate following a false wake, Plaintiffs allege the recording may have occurred before any such wake, and Plaintiffs did not consent to the recording in any event. FACC ¶¶ 59-86, 105; *see also Lopez v. Apple, Inc.*, 2021 WL 4059106, at *4 (N.D. Cal. Sept. 2, 2021) ("*Lopez II*") ("Apple argues that Plaintiffs provided consent based on the same Siri activation alert noted above.  Drawing all inferences in favor of Plaintiffs, they did not consent. Plaintiffs allege only that they were able to observe Siri being accidentally activated (including, in one case, by being asked what Plaintiff was searching for).  That does not indicate that Plaintiff provided consent to the recording, that they observed activation in every instance, or that recording did not take place prior to their observation.").

In short, Amazon has not demonstrated that Plaintiffs impliedly consented to having their non-interactions recorded, stored, and disclosed by their Alexa devices, and Amazon's interpretation of *Townsend* stretches the holding too far.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 26 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**C.** **The FACC States A Claim Under The Federal Wiretap Act Because Amazon Was Not A Party To All The Intercepted Communications**

The FWA generally prohibits the interception of "wire, oral, or electronic communications." 18 U.S.C. § 2511(1).  It provides a private right of action against any person who "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); *see also* 18 U.S.C. § 2520 (providing a private right of action for violations of § 2511); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1071 (N.D. Cal. 2021) (discussing same).  Plaintiffs allege that Defendants violated the FWA because they illegally intercepted Plaintiffs' oral and electronic communications. FACC ¶¶ 329-41.

The statute "contain[s] an exemption from liability for a person who is a 'party' to the communication."  *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (quoting 18 U.S.C. § 2511(2)(c), (d)).  Defendants seek to dismiss Plaintiffs' FWA claims on this "party" exemption and argue that Amazon was a "party" to ***each and every*** conversation made within earshot of an Alexa device, regardless of whether the conversation used a wake word or not, and regardless of whether the conversation was intended to be a command to Alexa or not.  *See* MTD at 41-42.

This nonsensical argument completely ignores the crux of Plaintiffs' lawsuit:  the detailed allegations that Alexa Devices illegally—and surreptitiously—listened to, recorded, stored, transmitted to cloud servers, and disclosed a vast number of conversations that were ***not intended for Alexa and did not contain a wake word.***  FACC ¶¶ 5, 8-9, 13-15, 57-91, 104-111.  Amazon plainly was not a party to these conversations, and the single case from this Circuit that Defendants cite in their motion supports Plaintiffs' position.  In *In re Facebook, Inc. Internet Tracking Litig.*, the plaintiffs alleged that Facebook violated the Wiretap Act because Facebook

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   had used "plug-ins" that users themselves had installed on their web browsers, to surreptitiously

2   duplicate and forward the internet activity between users' web browsers and other websites.  In

3   other words, the plaintiffs used web browsers (such as Google Chrome or Apple Safari) to surf

4   the internet and had installed a Facebook "plug in" to those browsers.  When those same

5   plaintiffs then visited non-Facebook websites, the Facebook "plug in" automatically—and

6   surreptitiously—sent logs of this internet activity back to Facebook itself.  The Ninth Circuit

7   held that Facebook was not a "party" to the communications between the plaintiffs and the non-

8   Facebook websites and, as a result, the "party" exemption to liability under the Wiretap Act did

9   not relieve Facebook from liability.[11]

10

11          The same logic applies here. Plaintiffs did not consent to have Alexa surreptitiously listen

12   to and record a host of private conversations ***not intended*** for Alexa, not directed at Alexa

13   Devices, and not involving or referencing Alexa.  *See* Argument § IV.B.2.b, *supra*.  The FACC

14   is replete with factual allegations detailing how Defendants illegally intercepted communications

15   giving rise to liability under the Federal Wiretap Act.  *See*, *e.g.*, *id.*; FACC ¶¶ 5, 8-9, 13-15, 57-

16   91, 104-111.  The Court should reject outright, based on Plaintiffs' clear allegations, the notion

17   that Amazon is a "party" to every single communication of every kind wherever an Alexa

18   Device is within earshot.

19

20

21

22

23   [11] Defendants also cite a Third Circuit opinion, *In re Google Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125 (3d Cir. 2015), but the Ninth Circuit explicitly rejected its holding in

24   *Facebook*, 956 F.3d at 608.  Regardless, in *In re Google Cookie Placement Consumer Priv. Litig.*, the Third Circuit found the party exception applied because there were transmissions between

25   "plaintiffs' browsers and first-party websites [*i.e.*, Google's websites]."  806 F.3d at 140.  By contrast, the communications here—specifically the non-interactions—were between Plaintiffs

26   and other persons, ***not*** their Alexa Devices or Amazon.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 28 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1       To the extent Defendants *are* trying to raise a factual dispute as to whether Amazon was a

2 known "party" to *all* communications made within earshot of an Alexa Device, that argument is

3 not proper for a motion to dismiss, where Plaintiffs' factual allegations are accepted as true. *See*,

4 *e.g.*, *Svenson v. Google Inc.*, 2015 WL 1503429, at *3 (N.D. Cal. Apr. 1, 2015) (refusing to

5 consider a factual dispute on a motion to dismiss). For example, Defendants argue (wrongly)

6 that "[n]one of the Plaintiffs alleges that he or she was unaware that the Alexa service was

7 listening for instructions to which it should respond." MTD at 42. That argument ignores

8 Plaintiffs' factual allegations that it was not known to Plaintiffs that Alexa Devices are always

9 listening, and essentially always intercepting. FACC ¶¶ 90, 105.

10       Defendants' related contention that communications and "commands directed to Alexa"

11 should be dismissed, *see* MTD at 42-43 n.15, is a red herring. Plaintiffs do not allege that

12 Defendants' recording of intentional commands directed to Alexa devices with a wake word

13 violates the FWA. This is not at issue with respect to Count XII.

14       Finally, Defendants sparsely argue—in a footnote—that Plaintiffs fail to identify

15 "electronic communications" that give rise to liability for such communications. *See* MTD at

16 42-43 n.15. As an initial matter, arguments contained wholly within footnotes are not properly

17 before the Court. *See*, *e.g.*, *First Advantage Background Servs. Corp.* v. *Private Eyes, Inc.*, 569

18 F. Supp. 2d 929, 935 n.1 (N.D. Cal. 2008) ("A footnote is the wrong place for substantive

19 arguments on the merits of a motion."). But this argument is also irrelevant. The FWA prohibits

20 the interception, disclosure, and use of any "wire, *oral*, or electronic communication." 18 U.S.C.

21 §§ 2511(1)(a), 2511(c), 2511(d) (emphasis added); *see also* 18 U.S.C. § 2520(a) ("[A]ny person

22 whose wire, *oral*, or electronic communication is intercepted, disclosed, or intentionally used in

23 violation of this chapter may in a civil action recover from the person or entity … which engaged

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 29 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

in that violation such relief as may be appropriate.") (emphasis added).  Thus, Plaintiffs need not

allege the interception of electronic communications; they may state a claim regarding the

interception of oral communications.

A sister court in this Circuit recently denied a motion to dismiss similar claims against

Apple for intercepting and disclosing private communications via Apple's "Siri" virtual assistant.

*See Lopez II*, 2021 WL 4059106, at *2-3.  The court's holding in *Apple* explains why such

claims should be allowed to proceed:

> On balance, the Court finds that these allegations plausibly show that Plaintiffs' private communications were intercepted … Plaintiffs … allege specific incidents where Siri activation occurred in private settings. Apple faults Plaintiffs for not alleging the contents of their communications, but the private setting alone is enough to show a reasonable expectation of privacy…. Second, the targeted advertising claims, while attenuated, are rendered plausible by the unique nature of oral communications. While advertising tracking abounds online, there are far fewer ways to intercept oral communications taking place in person. Thus, drawing all inferences in favor of Plaintiffs, the complaint plausibly alleges that targeted advertising arose from Siri interception, rather than another commercial auditory interception device.

*Id.*, at *2 (footnotes and internal quotations omitted).  The Court should deny Defendants'

motion to dismiss Plaintiffs' FWA claims.

### D.    The Complaint States A Claim Under The Federal Stored Communications Act

The SCA provides that "a person or entity providing an electronic communication service

to the public shall not knowingly divulge to any person or entity the contents of a communication

while in electronic storage by that service."  18 U.S.C. § 2702(a)(1).  The SCA defines an

"electronic communication service" to mean "any service which provides to users thereof the

ability to send or receive wire or electronic communications." 18 U.S.C. § 2510(15). The SCA

defines "electronic storage" to mean "any temporary, intermediate storage of a wire or electronic

communication incidental to the electronic transmission thereof" and "any storage of such

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                           - 30 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

communication by an electronic communication service for purposes of backup protection of

such communication." 18 U.S.C. § 2510(17).  Plaintiffs bring claims against Defendants under

the SCA's private right of action.  *See* 18 U.S.C. § 2707.

Defendants argue that the Complaint fails to plead that: (1) Defendants provided an

"electronic communication service," (2) the communications at issue were in "electronic

storage," or (3) Defendants divulged Plaintiffs' communications to third parties.  MTD at 43.

These arguments fail.  Defendants' Motion to dismiss this count must be denied because it relies

on an improperly narrow reading of the statute.

### 1.    The Complaint Pleads Facts Sufficient To Allege Defendants Provided An "Electronic Communication Service"

Defendants wrongly assert that the Complaint does not allege that Alexa provides an

"electronic communication service."  *See* MTD at 44.  Alexa Devices are intended to facilitate

the receipt of electronic communications by consumers using a wake word to Alexa so that when

a wake word is used, an Alexa Device can carry out a stated command.  The FACC plainly

alleges that "every interaction between any user and Alexa is recorded and sent to an Amazon

facility where it is permanently stored and reviewed by Amazon, its employees, and third

parties."  FACC ¶ 52.  Part of that interaction includes "sounds" and "data" that are "electronic

communications" as defined by 18 U.S.C. § 2510(12), and not themselves the underlying "oral

communication" excluded in the definition of an "electronic communication."  *See* FACC ¶¶ 60,

65 (setting forth examples of data related to oral communications that are intercepted by

Amazon).  For this reason, the Complaint adequately alleges that Alexa is an "electronic

communication service" as defined by 18 U.S.C. § 2510(15).

The cases Defendants cite do not call for a different conclusion. *See* MTD at 44.  With

respect to *Lopez I*, the plaintiffs "ha[d] not alleged that their own communications were disclosed

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - 31 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1    to third party contractors." 519 F. Supp. 3d at 687. Here, Plaintiffs allege that all

2    communications within earshot of an Alexa Device are subject to recording, storage,

3    transmission, and disclosure, which would logically include Plaintiffs'. *See* FACC ¶ 108. In

4    addition, the FACC specifically pleads how Alexa itself intercepted Plaintiffs'

5    communications.[12] *Id.* ¶¶ 59-84. This is enough at the pleading stage.

6

7         Defendants' two other cases are not relevant. Both involved claims based on users

8    visiting a website, which involves ***nothing*** akin to the interception or oral and electronic

9    communications that Plaintiffs complain of here. *See Crowley v. CyberSource Corp.*, 166 F.

10   Supp. 2d 1263 (N.D. Cal. 2001); *In re JetBlue Airways Priv. Litig.*, 379 F. Supp. 2d 299

11   (E.D.N.Y. 2005).

12

13   **2.    The Complaint Pleads That Plaintiffs' Communications And
             Data Were Held In "Electronic Storage"**

14        Defendants also wrongly assert the FACC fails to plead that Amazon held Plaintiffs' data

15   and communications in "electronic storage." *See* MTD at 45. Here again, Defendants

16   misunderstand the simple language of the statute. As an initial matter, the weight of Defendants'

17   argument is directed at a straw man. Defendants' entire argument regarding one of the two

18   disjunctive definitions of "electronic storage"—the "temporary, intermediate storage" prong—is

19   irrelevant because the FACC does not seek relief under that prong. *See* MTD at 45-46.

20

21        Instead, Plaintiffs' SCA claim proceeds under the other prong of liability, asserting that

22   "Amazon stores Plaintiffs' and Class members' electronic communications for backup or

23   processing purposes." FACC ¶ 353; *see also* 18 U.S.C. § 2510(17) (defining "electronic

24

25   _____

26   [12] Further, the *Lopez I* court's analysis of the § 2702 claim was relegated to just a few sentences, and barely analyzed the relevant issues, likely because the allegations were not fulsomely pled in that case. 519 F. Supp. 3d at 687.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                          - 32 -

storage" to include "any storage of such communication by an electronic communication service for purposes of backup"); *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608 (confirming that definitions of "electronic storage" are disjunctive).

Here, Defendants devote a short paragraph, which asserts little. MTD at 46. The one case Defendants cite, *Theofel v. Farey-Jones,* 359 F.3d 1066 (9th Cir. 2004), hurts Defendants because it supports Plaintiffs' allegations of liability based on storage for "backup" purposes. *Id.* at 1075. The Court held that because the statute does not define "backup," it would analyze the word "within the ordinary meaning of [the] terms" in the statute. *See id.* The Court then held the storage of email messages on an internet service provider's server after delivery, in order to provide a second copy of the message to future users, fit the "ordinary meaning" of the term "backup." This makes sense: *Merriam-Webster* defines "backup" to mean, relevant here, "a copy of computer data." BACKUP, MERRIAM-WEBSTER DICTIONARY, www.m-w.com/dictionary/backup. In this case, Plaintiffs allege Defendants stored copies of Plaintiffs' electronic communications for backup purposes and, without authorization, shared them with third parties. FACC ¶ 353; *see also* FACC ¶¶ 88, 106, 109, 114. This fits the "ordinary meaning" of "backup", and Plaintiffs sufficiently plead a claim under the SCA.

### 3. The Complaint Pleads That Defendants Divulged Class Members' Communications To Third Parties, Including Amazon's Contractors Around The World

The FACC also sufficiently pleads that Defendants transmitted and divulged Plaintiffs' and Class members' communications to its workers and third-party contractors around the world. FACC ¶¶ 88, 106, 109, 114, 353. In their motion to dismiss, Defendants ignore these well-pled factual allegations, and argue the Complaint "does not plead factual allegations that Amazon has 'divulge[d] to any person or entity the contents of a communication' that is not exempt" under

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                        - 33 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

the SCA.  *See* MTD at 46.  A cursory review of the FACC negates this argument. *See* FACC ¶¶ 88, 106, 109, 114, 353.

*First*, Plaintiffs do not make "conclusory allegations" about Amazon's disclosure of Plaintiffs' communications.  *See* MTD at 47.  The FACC pleads specific factual allegations that set forth in detail how Amazon contractors review recordings and data intercepted by Alexa devices.  *See* FACC ¶¶ 109, 114.  Defendants' argument itself is conclusory, painting with broad strokes and failing to recognize Plaintiffs' plain allegations of Amazon's actual transmissions and disclosure to third party contractors, and its use of Plaintiffs' data for targeted advertising. *Compare* MTD at 47, *with* FACC ¶¶ 109, 114.

*Second*, Plaintiffs need not plead how Amazon disseminated each and every recording to other parties.  In a 2020 decision, a California federal court denied in part a motion to dismiss similar SCA claims against Google.  *Google Assistant I*, 457 F. Supp. 3d at 822.  The Court dismissed claims based on disclosure for purposes of "targeted advertising" because the plaintiffs did not sufficiently allege to whom Google disclosed communications for the purpose of targeted ads.  *Id*.  But the Court upheld claims regarding Google's disclosure of communications "to third parties for the purpose of improving the Google Assistant's voice recognition functionality; these third parties are the 'subcontractors' Defendants allegedly used to perform the relevant analysis." *Id*.  Plaintiffs' similar allegations here should also survive.

The *Google Assistant I* defendants also argued against SCA liability, as Defendants here, on the grounds that "their subcontractors are 'employees or agents' and not 'third parties' under § 2702(a)." 457 F. Supp. 3d at 824.  There, as here, the argument was "hardly even developed". *See id*.  The court correctly held that "whether an entity is a 'third party' within the meaning of

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- 34 -

the statute is a factual question" that was inappropriate at the motion to dismiss stage.  *Id.*  The same result should hold here.[13]

Lastly, Defendants make a half-hearted effort to insulate their conduct from liability by arguing that Amazon was an intended recipient of all the communications and words spoken by Plaintiffs and the Class within earshot of an Alexa device—whether intended for Alexa (and thus preceded by a wake word) or not.  *See* MTD at 48.  Not so.  As discussed in Argument § IV.C, *supra*, Defendants were ***absolutely not*** the intended recipient—or a party—to any of the communications or word spoken within earshot of an Alexa that were not preceded by a wake word (non-interactions).  This argument is akin to suggesting that conversations made within a home while someone is pressing their ear up against the door would make that intruder a "party" to the communication.  Here, Plaintiffs and the Class reasonably assumed that Alexa was only intercepting a communication when a wake word was used, and even then, that any recording was only temporary, not permanent, and certainly not used by Defendants for other commercial purposes.  Argument § IV.C, *supra*; *see also* RJN Exs. A-C; FACC Exs. A-B.  This was clearly articulated by a sister court in this Circuit that refused to dismiss similar claims brought under the California Invasion of Privacy Act:

> [I]t cannot be that anyone who receives a direct signal escapes liability by becoming a party to the communication. Someone who presses up against a door to listen to a conversation is no less an eavesdropper just because the sound waves from the next room reach his ears directly. That person remains a third party, even as a direct recipient of the speaker's communication.

---

[13] Defendants also cite to a later decision in the same case, *In re Google Assistant Privacy Litig.*, --- F. Supp. 3d ---, 2021 WL 2711747 (N.D. Cal. July 1, 2021) ("*Google Assistant II*"), but that decision dismissed (again) SCA claims based on targeted advertising alone. *See id.*, at *9. That decision otherwise affirmed similar claims under the Federal Wiretap Act. *See id.*, at *5-9.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - 35 -

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1   *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *2 (N.D. Cal. Oct. 23, 2019).[14]

2      **E.      The Complaint States A Claim Under The Washington Consumer**
          **Protection Act Because It Pleads "Unfair Or Deceptive Acts" And**
3          **Injury**

4          Defendants seek to dismiss Plaintiffs' WCPA claims under the mistaken argument that

5   the Complaint does not adequately plead "unfair or deceptive acts" or injury. *See* MTD at 31-32.

6   Defendants are wrong, and their motion should be denied.

7
          To state a claim under the Washington Consumer Protection Act ("WCPA"), RCW

8   19.86, *et seq.*, Plaintiffs must establish: (1) an unfair or deceptive act or practice; (2) occurring in

9
10  trade or commerce; (3) public interest impact; (4) injury to Plaintiffs' business or property; and

11  (5) causation. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d

12  778, 780, 719 P.2d 531 (1986); *see also Domain Name Comm'n Ltd. v. DomainTools, LLC*, 449

13  F. Supp. 3d 1024, 1030-31 (W.D. Wash. 2020). Defendants only seek to challenge whether

14  Plaintiffs have adequately pleaded the first and fourth elements.[15]

15
          The Washington Supreme Court has recognized that the Legislature expressly mandated

16
17  courts "liberally construe[]" the WCPA so "that its beneficial purposes may be served." *Young*

18

19  [14] Courts routinely recognize the analogous nature of CIPA and the federal wiretapping laws. *See*,
20  *e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 607 (comparing CIPA and Federal
    Wiretap Act).
21
    [15] Defendants do not challenge whether Plaintiffs have adequately pleaded the second, third, and
22  fifth elements. By failing to do so, Defendants have waived such a challenge to Plaintiffs pleading
    of these elements. *See* Fed. R. Civ. P. 12, advisory committee's note to 1946 amendment ("other
23  than provided in subdivision (h) a party who resorts to a motion to raise defenses specified in the
    rule, must include in one motion all that are then available to him."); *Hernandez v. City of San*
24  *Jose*, 241 F. Supp. 3d 959, 984-85 (N.D. Cal. 2017) ("[U]nder Rule 12(g)(2) and Rule 12(h)(2), a
    party that seeks to assert a defense pertaining to a failure to state a claim that ***was available but***
25  ***omitted*** from an earlier Rule 12 motion can ***only do so*** in a pleading, a Rule 12(c) motion, or at
    trial.") (citing WRIGHT & MILLER, 5C FEDERAL PRACTICE & PROCEDURE § 1384, 479 (3d ed.
26  2004)).

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 36 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*v. Toyota Motor Sales, U.S.A.*, 196 Wash. 2d 310, 320, 472 P.3d 990 (2020) (quoting RCW 19.86.920). In determining whether a plaintiff has pled a claim under the WCPA, courts are permitted to look to federal interpretation of similar laws for guidance; however, where Washington "has developed its own jurisprudence regarding application of [the W]CPA," they must follow Washington law.  *Klem v. Wash. Mut. Bank*, 176 Wash. 2d 771, 787, 295 P.3d 1179 (2013).  Pursuant to the WCPA, Plaintiffs also seek injunctive relief authorized in RCW 19.86.095 to "protect the public interest" from Amazon's unfair or deceptive practices. Recording and transmitting conversations is illegal under Washington law.  All Plaintiffs, even the non-registrants who did not purchase an Alexa Device, have an interest in enforcing the WCPA.  *See Lightfoot v. MacDonald*, 88 Wash. 2d 331, 336, 544 P.2d 88 (1976) (the purpose of the private right of action is "to enlist the aid of private individuals … to assist in the enforcement of the [WCPA].").

### 1.   The Complaint Pleads "Unfair Or Deceptive Acts" Under The WCPA

The first element of a WCPA claim is an unfair or deceptive act or practice.  *See Hangman Ridge Training Stables, Inc.*, 105 Wash. 2d at 780.  As noted above, the "'[u]nfair or deceptive" element "must be liberally construed." *Young*, 196 Wash. 2d at 320 (quoting RCW 19.86.920).  This liberal and flexible construction is necessary because "[i]t is impossible to frame definitions which embrace all unfair practices." *Id.* (citations omitted). Thus, there are many ways to satisfy this element.  *See id.* at 314 n.1 (citing *Klem*, 176 Wash. 2d at 787).

For example, Plaintiffs may satisfy the deceptive prong of this element by pleading facts alleging an act or practice "had the ***capacity*** to deceive a substantial portion of the public."  *Id.* at 314 (citing *Panag v. Farmers Ins. Co. of Wash.*, 166 Wash. 2d 27, 47, 204 P.3d 885 (2009)) (emphasis in original). To meet this low bar, Plaintiffs "need not show the act in question was

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                  - 37 -

Byrnes ♦ Keller ♦ Cromwell llp
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

intended to deceive," nor do Plaintiffs even need to allege reliance or materiality,[16] let alone plead "that they–or anyone–were in fact deceived." *Id.* (citations omitted).

Alternatively, Plaintiffs may also satisfy this element by pleading "unfair acts," which need not be deceptive at all. *See Domain Name Comm'n Ltd.*, 449 F. Supp. 3d at 1031. This may be done by, for example, by pleading an "act or practice not regulated by statute but in violation of public interest." *Klem*, 176 Wash. 2d at 787.  Because "the full contours of 'unfair acts' under the [W]CPA have not yet been established," this Court, citing *Klem*, has also relied upon the FTC Act, 15 U.S.C. § 45(n), to define an "unfair act" as one which "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits." *Domain Name Comm'n Ltd.*, 449 F. Supp. 3d at 1031.

As a threshold matter, in arguing that Plaintiffs fail to adequately plead an unfair or deceptive act, Defendants focus solely on the "unfair" prong, and entirely ignore the "deceptive" prong.  *See* MTD at 32.  But, as the Washington Supreme Court has explained, "[t]he 'or' between 'unfair' and 'deceptive' is disjunctive," meaning "an act or practice can be unfair without being deceptive."  *Klem*, 176 Wash. 2d at 787; *see also Domain Name Comm'n Ltd.*, 449 F. Supp. 3d at 1031 (same, citing *Klem*).  This distinction is significant here because Plaintiffs allege that Defendants have violated the WCPA in ***both*** ways. *See* FACC ¶¶ 107, 166-167, 169,

---

[16] Defendants cite to *Stephens v. Omni Insurance Co.*, 138 Wash. App. 151, 166, 159 P.3d 10 (2007) for the proposition that it is necessary that the unfair or deceptive misrepresentation be of "material importance," but this holding by an intermediate appellate court case was recently rejected by the Washington Supreme Court in *Young*. *Young*, 196 Wash. 2d at 318, 319 n.3 (holding that it was "specifically reject[ing] that proposition," and deemed the exact sentence Defendants cite to be a "misapprehension" "from an out-of-context-statement in an overruled case.").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 38 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

173-174.  Defendants' failure to even acknowledge Plaintiffs' numerous factual allegations regarding Defendants deceptive conduct should be fatal.  Ultimately, it makes little difference though.  Defendants' challenges under the "unfair" prong likewise fail, as further discussed below.

### a.      Rule 9(b) Does Not Apply

Defendants contend Rule 9(b) applies to Plaintiffs' WCPA claim. They are wrong. Rule 8 is the proper pleading standard for Plaintiffs' claim because Plaintiffs' allegations do not sound in fraud. Regardless, even if the Court found Rule 9(b) applies – which it does not – Plaintiffs' WCPA claim satisfies that pleading standard.

Rule 9(b) applies to claims that specifically allege fraud or allege facts that "necessarily constitute fraud (even if the word 'fraud' is not used)."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003). It is well-settled that "not all claims brought under the Washington CPA must be pled with the specificity prescribed by Rule 9(b)."  *Nemykina v. Old Navy, LLC*, 461 F. Supp. 3d 1054, 1058 (W.D. Wash. 2020). Indeed, "where a plaintiff has not 'alleged facts that constitute fraud and the gravamen of the complaint is not fraud,' the heightened pleading standard of FRCP 9(b) does not apply."  *Mainz Brady Grp., Inc. v. Shown*, 2017 WL 4538968, at *2 (W.D. Wash. Oct. 11, 2017) (quoting *Vernon v. Qwest Commc'ns, Int'l, Inc.*, 643 F. Supp. 2d 1256, 1265 (W.D. Wash. 2009)).

As explained by the Washington Supreme Court, "a claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of the public interest."  *Klem*, 176 Wash. 2d at 787.  In other words,

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                  - 39 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

"fraud is **one** of the **many possible** unfair or deceptive acts for which a consumer may seek relief under" the WCPA.  *Vernon*, 643 F. Supp. 2d at 1265 (emphasis added).

Here, Plaintiffs neither assert a fraud claim nor the elements of fraud,[17] and the gravamen of the Complaint is not fraud—which is bolstered by the fact that the only claim Amazon argues should be subject to Rule 9(b) is the WCPA claim.  Rather, the Complaint alleges that Amazon's conduct is in violation of the public interest because it violates Plaintiffs' fundamental right to privacy and constitutes a per se violation of the WCPA because Amazon's conduct violates Washington's wiretapping statutes.  *See* FACC ¶¶ 165, 169.  Even if the Washington Wiretapping Statute is not found to be a *per se* violation, the WCPA claim still lies as recording, storing, disclosing, and transmitting private conversations has a public impact and is contrary to the public interest.

Moreover, Amazon's argument that Rule 9(b) applies because "Plaintiffs' WCPA claim characterizes Amazon as falsely representing and concealing information about the collection of consumer data," MTD at 34, is unavailing as similar arguments were made, and rejected, in *Lohr v. Nissan N. Am., Inc.*, 2017 WL 1037555 (W.D. Wash. Mar. 17, 2017).  There, the plaintiff alleged that the defendant knew its vehicles contained defective sunroofs, failed to disclose the defect, and systematically denied coverage for the repair of the defect.  *See id.*, at *4. The court noted those allegations "indicated [defendant's] acts and practices are capable of deceiving the

---

[17] Under Washington law, "[t]he nine elements of fraud are: (1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff." *Stiley v. Block*, 130 Wash. 2d 486, 505, 925 P.2d 194 (1996).  As previously discussed, the elements of the WCPA differ significantly, and the Washington Supreme Court has said that WCPA claims need not allege intent to deceive, reliance, materiality, or plead anyone was deceived, all of which are elements of fraud.  *See Young*, 196 Wash. 2d at 317-18.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 40 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

public," but found Rule 9(b) did not apply to plaintiff's WCPA claim because there was "no

effort by Plaintiff to allege common law fraud elements, nor are there allegations that

[defendant] intended to deceive Plaintiffs."  *Id.*  So, too, here, as Plaintiffs' allegations show

Amazon's conduct *is* capable of deceiving the public.  *See Nemykina*, 461 F. Supp. 3d at 1058

("claiming that Defendants engaged in an act that had a *capacity* to deceive" "presumably would

not require pleading with heightened specificity.") (emphasis in original).

Thus, despite Amazon's contentions otherwise, concealment allegations do not

automatically equate to fraud.  *See Nguyen v. Doak Homes, Inc.*, 140 Wash. App. 726, 734, 167

P.3d 1162 (2007) (noting failure to disclose a material fact may support a WCPA claim, despite

it not sounding in fraud).  While the effect of Amazon's conduct is alleged to have the capacity

to deceive, this "is not the same thing as alleging that [Amazon] affirmatively represented that it

had a right to do something, which, in reality, it had no right to do," which would constitute

fraud.  *Bund v. Safeguard Props. LLC*, 2018 WL 3917930, at *4 (W.D. Wash. Aug. 16, 2018)

(rejecting Rule 9(b)'s application to a WCPA claim).  Defendants' failure to recognize this

critical distinction is fatal to their pleading standard argument.

Accordingly, the Court should reject Amazon's efforts to recast Plaintiffs' allegations as

fraud-based and find Plaintiffs' WCPA claim is not subject to Rule 9(b).  *See*, *e.g.*, *Vernon*, 643

F. Supp. 2d at 1265 (determining that Rule 9(b) does not apply because plaintiffs did not allege

fraud as an element of their consumer protection act claims); *N. Seattle Health Ctr. Corp. v.

Allstate Fire & Cas. Ins. Co.*, 2016 WL 4533055, at *4 (W.D. Wash. Jan. 27, 2016) (holding

Rule 8(a) applies to WCPA claims and citing cases); *Grigsby v. Valve Corp.*, 2013 WL

12310666, at *3 (W.D. Wash. Mar. 18, 2013) (finding Rule 9(b) did not apply to plaintiff's

WCPA claim because plaintiff did not aver the defendant's intent to deceive).

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- 41 -

Regardless, even if Rule 9(b) applies, Plaintiffs satisfy it.  "Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct … so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1106 (internal quotations omitted).  Further, in this case, Plaintiffs would be entitled to a lenient application of Rule 9(b) "as to matters within the opposing party's knowledge."  *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

Here, the specificity of Plaintiffs' allegations give Defendants sufficient notice to prepare an adequate answer. Plaintiffs' comprehensive factual allegations can be ascertained from even a mere cursory review of the FACC.  Indeed, Plaintiffs' allegations are accompanied by a myriad of support, including investigative reports, government inquires, newspaper publications, and scientific journals.  FACC ¶¶ 4-16, 49-91, 102-114, 121-123.  Despite Defendants' argument to the contrary, MTD at 33, these allegations collectively detail the "who, what, when, where, and how" of the misconduct charged.  Amazon's Motion emphasizes its knowledge as it attempts to add multiple documents and public references to the record, attempts to redefine its conduct as lacking intent, and acknowledges the heart of the allegations are true, but claims that they are a non-actionable "false wake."

Specifically, Amazon developed Alexa, launched the product in 2014, and advertised it as needing a wake word to bring the Alexa Device to life.  FACC ¶¶ 44-49.  However, unbeknownst to Plaintiffs, Amazon intercepts and records conversations through Alexa before a wake word is uttered (and even when no wake word is used), permanently stores those recording, and shares those recordings with third parties to review.  *See id.* ¶¶ 50-52.  This is despite Amazon's assurances that it does not record, store, and disclose recordings where no wake word

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                        - 42 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

is used.  RJN Ex. A-C; FACC Ex. A-B.  Importantly, Amazon does not need to permanently store these recordings for Alexa Devices to function.  *See id.* ¶¶ 54-56.  In addition, Alexa Devices record, store, transmit, and disclose Plaintiffs' voices when no command is given, when no consent is given, and without any indication the Alexa Device is activated.  *See id.* ¶¶ 59-101. The storage of the recordings is reportedly unsecure. *See id.* ¶ 112.  Plaintiffs, especially Unregistered Plaintiffs, have no way to permanently delete the recordings.  *See id.* ¶¶ 51, 108.[18] Rather, Amazon captures and stores these recordings for its own benefit because the "world's most valuable resource is no longer oil, but data." *See id.* ¶¶ 109, 114-23.  Put simply, the FACC satisfies Rule 9(b).

> b. *Plaintiffs Adequately Plead Unfair And Deceptive Conduct*

Defendants' next argument is that Plaintiffs allege no facts demonstrating any actionable misrepresentation or unfair conduct.  MTD at 34.  Putting aside that Defendants' argument wholly ignores Plaintiffs' theory that Defendants' omissions also provide a basis for its claims, Defendants' argument here simply discards Plaintiffs' numerous allegations regarding Defendants' affirmative unfair and deceptive conduct.  FACC ¶ 107 (describing Defendants' "deceptive practice of improperly recording and intercepting communications"); *id.* ¶ 166 (alleging Defendants have "committed unfair acts" "by violating Plaintiffs' right to privacy and by storing private information about Plaintiffs and the Class without their consent, including the voices of Plaintiffs and the Class."); *id.* ¶ 167 (detailing how Defendants surreptitiously "shared its collected data with third parties for profit or other business purposes," and describing such as

---

[18] Amazon falsely claims unregistered users can review and delete conversations.  This is not true as unregistered users can't access, much less delete, the recordings either verbally or by computer. Although registered users can access the recordings, they are unable to completely delete everything Amazon captured.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 43 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

"an unfair or deceptive act or practice."); *id.* ¶ 169 (describing Defendants' "unfair competitive advantage" stemming from their use of Plaintiffs' data for improvements to its products and from the profits or other benefits it derives from transmitting such data to third parties); *id.* ¶ 173 (describing Defendants' actions as "unfair" because "they offend public policy as established by statute and are otherwise unethical, oppressive, or unscrupulous."); *id.* ¶ 174 (discussing the "causal link between the unfair or deceptive acts complained of and the injuries alleged."). Defendants' indifference of the factual allegations in the FACC does not mean they do not exist.

Defendants' first argument regarding insufficiency is merely a rehash of their argument that Plaintiffs failed to satisfy Rule 9(b). *Compare* MTD at 34, *with* MTD at 33-34. For purposes of brevity, Plaintiffs rest on their arguments in Argument § IV.E.1.a.

Defendants' second argument improperly asks the Court to reject the instructions of *Iqbal* and *Twombly*—to not assume the truth of the factual allegations in Plaintiffs' FACC—and instead seek have the Court make highly disputed factual determinations in their favor, all without giving Plaintiffs the opportunity to present all evidence that is necessary to support their claims.[19]  Defendants cite extraneous and self-serving documents, and the Court should disregard them.  *See, e.g.*, *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1042 (W.D. Wash. 2018) (taking judicial notice of Terms of Use from a publicly-accessible website, however, the statement in the Terms of Use quoted by the defendant could not be considered for the truth of the matter asserted).

---

[19] More detailed discussion as to why the Court should not deem these documents to be incorporated by reference and should not take judicial notice of them is discussed in Plaintiffs' Response in Opposition to Defendants' Request for Judicial Notice, filed contemporaneously with this Response in Opposition to Defendants Motion.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 44 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

In addition, Defendants misstate the pleading requirements for alleging "unfair acts". Defendants gripe that Plaintiffs have "fail[ed] to substantiate how Alexa's functioning as Amazon disclosed is somehow 'unfair,' or caused 'substantial injury' to Plaintiffs that was unavoidable." MTD at 34. But this is not the correct standard. **First**, at this stage in the proceedings, Plaintiffs need not "substantiate," *i.e.*, prove, anything. Plaintiffs must merely "plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Somers*, 729 F.3d at 960. **Second**, Plaintiffs' theory of the case is not that Alexa "function[s] as Amazon disclosed," but rather, that Defendants did not "fully disclose[] that such devices are recording, storing, analyzing, and utilizing their private information." *See*, *e.g.*, FACC ¶ 170. **Third**, Defendants omit that all Plaintiffs must plead with respect to causation is that it is "*likely* to cause substantial injury to consumers," *see Klem*, 176 Wash. 2d at 787 (emphasis added), not that it in fact "caused substantial injury." **Fourth**, a WCPA violation lies even if every word and phrase parsed is literally true. *Stephens v. Omni Ins. Co.*, 138 Wash. App. 151, 167, 159 P.3d 10 (2007) ("A defendant need not affirmatively state an untrue fact to have committed a deceptive practice."). **Finally**, and most importantly, Defendants falsely claim that the injury must have been "unavoidable," when the standard is that the alleged injury must be "not reasonably avoidable by consumers themselves."[20] *Id.*

---

[20] Here, the injuries Plaintiffs complain of include having their private information recorded, stored, transmitted, analyzed, and used by the Defendants, and disclosed to third parties. "In determining whether consumers' injuries were reasonably avoidable, courts look to whether the consumers had a free and informed choice." *Federal Trade Comm'n v. Neovi, Inc.*, 604 F.3d 1150, 1158 (9th Cir. 2010). An injury is reasonably avoidable if consumers "have reason to anticipate the impending harm and the means to avoid it," or if consumers are aware of, and are reasonably capable of pursuing, potential avenues toward mitigating the injury after the fact. *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168-69 (9th Cir. 2012) (citing *Orkin Exterminating Co., Inc. v. FTC*, 849 F.2d 1354, 1365-66 (11th Cir. 1988)). Here, Defendants provide no explanation, for example, of how an unregistered class member could reasonably avoid having their private

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                    - 45 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

Plaintiffs' allegations are sufficient under the correct standard or Defendants' heightened standard for alleging "unfair or deceptive acts", which is conduct that "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits." *Wilson v. PTT, LLC*, 2021 WL 211532, at *8 (W.D. Wash. Jan. 21, 2021). In short, Plaintiffs have alleged that Defendants have a practice of improperly recording, intercepting, and transmitting Plaintiffs' private communications; violated Plaintiffs' right to privacy by storing their private communications without consent; and transmitted or shared Plaintiffs' private information with third parties for profit. *See* FACC ¶¶ 107, 166-167, 169, 173-174. These allegations are just some of the many in the FACC that describe Defendants' unfair and deceptive conduct. These allegations are sufficient to plead an unfair or deceptive act. *See, e.g.*, *Loops, LLC v. Amercare Prods., Inc.*, 636 F. Supp. 2d 1128, 1132-33 (W.D. Wash. 2008) (denying motion to dismiss as premature and determining allegations regarding defendant's false representations and intent to unfairly compete were sufficient to plead unfair or deceptive conduct); *see also Lawson v. Ocwen Loan Servicing, LLC*, 2011 WL 564376 (W.D. Wash. Feb. 8, 2011) (denying motion to dismiss because plaintiff alleged sufficient facts to show requisite elements of WCPA claim).

### 2.    The Complaint Pleads Sufficient Injury Under The WCPA

The fourth element of a WCPA action requires a showing that a plaintiff was injured in his or her "business or property." *Hangman Ridge Training Stables,* 105 Wash. 2d at 780. The Washington Supreme Court has held that "no monetary damages need be proven, and that

---

information intercepted by Defendants, nor do Defendants even attempt to explain how Plaintiffs can "un-ring the bell" and prevent the disclose of their private information to third parties when such private information has already been disclosed, despite potentially being able to delete such recordings to prevent future disclosures or cease using their devices or certain features.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                        - 46 -

Byrnes ♦ Keller ♦ Cromwell LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

nonquantifiable injuries, such as loss of goodwill would suffice for this element." *Nordstrom, Inc. v. Tampourlos*, 107 Wash. 2d 735, 740, 733 P.2d 208 (1987).  Plaintiffs plead three different injuries to their property: (1) an invasion of their privacy interests; (2) injury to Plaintiffs and Class members who overpaid for Alexa-enabled devices; and (3) injury arising out of Defendants' misappropriation of Plaintiffs' words, oral communications, and likeness.

*First*, Plaintiffs plead injury to their privacy interests.  FACC ¶ 170.  The caselaw regarding whether invasions of privacy are an "injury" under the WCPA and similar statutes has evolved.  Recently, this Court denied a motion to dismiss similar WCPA claims against a website operator where the alleged injury arising out of the defendants' acts was to the plaintiffs' privacy interests.  *Domain Name Comm'n Ltd.,* 449 F. Supp. 3d at 1031-32.  Here, Plaintiffs allege that their injuries from Defendants' unlawful recording, storing, analyzing, and utilizing the Class's private speech includes "harm[ ] in their privacy interests" and "injur[y] by having personal conversations and personal characteristics used and continuing to be used for commercial gain, all without announcement or consent."  FACC ¶ 170.  Just as in *Domain Name*, Plaintiffs here sufficiently allege a cognizable injury to their property arising out of Defendants' violations—and misappropriation—of their privacy interests.  *See* 449 F. Supp. 3d at 1031-32 (rejecting defendants' argument that complaint failed to plead injury to consumers, finding that "depriving consumers of their ability to control the privacy of certain information" was sufficient). Washington courts have found a number of non-monetary injuries similarly offensive to an invasion of privacy to meet the "injury" element of a WCPA claim, and this Court should reaffirm its parallel holding in *Domain Name*.  *See*, *e.g.*, *Nordstrom*, 107 Wash. 2d at 740 (impermissible trade name infringement); *Tallmadge v. Aurora Chrysler Plymouth, Inc.*, 25 Wash. App. 90, 93, 605 P.2d 1275 (1979) (inconvenience of dealing with defective vehicle and

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - 47 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

deprivation of use and enjoyment of property compensable WCPA injuries); *Dennis v. Mylife.com*, 2021 WL 6049830, at *5 (D.N.J. Dec. 20, 2021) (holding that "Plaintiffs pleaded a concrete harm under a disclosure theory, as they allege that [defendant] disseminated private and/or inaccurate information about them to third parties"); *Meyerson v. Prime Realty Servs., LLC*, 796 N.Y.S.2d 848, 856 (N.Y. Sup. Ct. N.Y. County 2005) ("[I]t cannot be doubted that a privacy invasion claim and an accompanying request for attorney's fees may be stated under GBL § 349 based on non-pecuniary injury, such as deprivation of the right to maintain the privacy of medical records."); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (noting that invasion of privacy could have formed basis of District of Columbia's consumer protection statute).

  ***Second,*** Plaintiffs allege they were injured by paying more for Alexa devices than they would have had Plaintiffs known about Defendants' misconduct. FACC ¶ 170. This allegation is not speculative. Defendants, here again, attempt to litigate the facts at the pleading stage. For example, Defendants argue that Plaintiffs do not each plead sufficient facts about how much they paid for Alexa devices, or what the "benefit" of the purchase bargain was. *See* MTD at 38. These details will be fleshed out in discovery. At present, the Complaint sufficiently puts Defendants on notice of the claims against them. Furthermore, certain of Defendants' arguments also advance questions that will likely be the subject of expert opinions and reports, including whether Plaintiffs and the Class "received the benefits of the product [they] purchased." *See* MTD at 38. Defendants rely heavily on *Google Assistant II* to argue Plaintiffs do not adequately plead certain facts to support Plaintiffs' WCPA claim. *See* MTD at 39. But that case involved a California statute and analyzed the claim under Rule 9(b), which does not apply here. *Google*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

- 48 -

*Assistant II*, 2021 WL 2711747, at *15 ("Rule 9(b)'s heightened pleading standard extends to Plaintiffs' CLRA [California Legal Remedies Act] claim as it sounds in fraud.").

**Third**, Plaintiffs allege they were economically injured by Defendants' interception and misappropriation of their personal conversations and personal characteristics that were not directed to Alexa devices.  FACC ¶ 170.  As the world becomes more digitized, these conversations and characteristics have real monetary value.  FACC ¶¶ 117-23. The voice biometrics market was valued at $1.1 billion in 2020; this market value is projected to increase to $3.9 billion by 2026.  FACC ¶ 118.  For example, Plaintiffs' voice recordings were likely worth at least $5 each.  FACC ¶ 120.  Plaintiffs allege that Defendants harmed them by taking their voice recordings without their consent and without compensating them.  FACC ¶¶ 121-23, 170. Defendants disagree with this factual allegation and throw up a host of purely fact-based arguments regarding the true value of Plaintiffs' voice, and whether or to what extent Defendants either stole or diminished that asset.  *See* MTD at 39-40. Amazon's damages protestations ring hollow in light of its own patent application demonstrating that the ability to gather conversations is valuable, but also, *sub silento*, acknowledging that the words and conversations being recorded have a commercial value.  This debate is not properly presented in a motion to dismiss, but rather only after a full factual record has been developed regarding the economic value of Plaintiffs' personal conversations and personal characteristics.  Indeed, it will be up to the jury to make that determination.  From a *pleading* perspective, however, Plaintiffs have set forth factual allegations sufficient to allege injury to their personal property.[21]

---

[21] Defendants' factual contention at page 41 of their brief that "Plaintiffs could even download and attempt to sell any purported voice recordings if they wish" is not true to the undersigned's knowledge, as it does not appear based on Plaintiffs' or Plaintiffs' counsel's investigations that users can download voice recordings.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 49 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

The cases Defendants cite do not change the result.  In *Cousineau v. Microsoft Corp.*, the plaintiff had only pled injury related to a cell phone data plan.  992 F. Supp. 2d 1116, 1128 (W.D. Wash. 2012).  Defendants' parenthetical description of the case is highly misleading, MTD at 38, because the plaintiff there did not plead privacy violations or economic injuries akin to those Plaintiffs plead here as forming the basis of her injury.  *See Cousineau*, 992 F. Supp. 2d at 1128.  This Court's decision in *Gragg v. Orange Cab Co.* also involved different factual allegations.  942 F. Supp. 2d 1111, 1118-19 (W.D. Wash. 2013).  First, that case involved text messages, not (as here) the illegally covert interception of innumerable private oral conversations inside Plaintiffs' homes.  *Cf. id.*  Second, the plaintiffs in *Gragg* alleged "aggravation and annoyance" and losses related to cell phone usage—not the economic injuries Plaintiffs plead here regarding overpayment for devices or harm related to the value of their biometric property. *Cf. id.*  Third, the *Gragg* decision was decided several years before this Court rendered its decision in *Domain Name*, and the latter represents an appropriate progression of the law related to well-pled allegations involving the illegal interception of private oral and electronic communications.  Defendants' remaining cases are also inapposite.  For example, *Brotherson v. Pro Basketball Club, LLC*, was a summary judgment decision issued after full discovery and the court found the plaintiffs' injury was at most mental injury.  604 F. Supp. 2d 1276, 1296 (W.D. Wash. 2009).  And their remaining cases—cited at MTD at 39-40—all involve a California statute, not the WCPA.  The interpretations of a California statute by federal courts in California does nothing to change that Plaintiffs here plead three distinct categories of injuries that satisfy the injury requirement of the WCPA.

**Finally**, Plaintiffs seek nominal damages separate and apart from any other relief (FACC at Prayer for Relief), which is a sufficient basis in and of itself to confer standing.  *See*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - 50 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

*Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 801-02 (2021) ("Because nominal damages were available at common law in analogous circumstances, we conclude that a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right.").

## V.       CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion in its entirety.

Respectfully submitted,

DATED: January 12, 2022                    */s/ Bradley S. Keller*

**BYRNES KELLER CROMWELL** LLP
BRADLEY S. KELLER, WSBA #10665
1000 Second Avenue
Seattle, WA  98104
Telephone:  206/622-2000
206/622-2522 (fax)
bkeller@byrneskeller.com

*Liaison Counsel for Plaintiffs and the Class*

**LABATON SUCHAROW LLP**
MICHAEL P. CANTY
(admitted *pro hac vice*)
CAROL C. VILLEGAS
(admitted *pro hac vice*)
WENDY TSANG
(*pro hac vice* forthcoming)
DAVID SALDAMANDO
(admitted *pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: 212/907-0700
212/818-0477 (fax)
mcanty@labaton.com
cvillegas@labaton.com
wtsang@labaton.com
dsaldamando@labaton.com

**ROBBINS GELLER
RUDMAN & DOWD LLP**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

PAUL J. GELLER
STUART A. DAVIDSON
(admitted *pro hac vice*)
MAXWELL H. SAWYER
(admitted *pro hac vice*)
120 East Palmetto Park Drive, Suite 500
Boca Raton, FL  33432
Telephone: 561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com
sdavidson@rgrdlaw.com
msawyer@rgrdlaw.com

*Co-Lead Counsel for Plaintiffs and the Class*

**THORNTON LAW FIRM LLP**
GUILLAUME BUELL
(admitted *pro hac vice*)
1 Lincoln Street
Boston, MA  02111
Telephone:  617/720-1333
617/720-2445 (fax)
gbuell@tenlaw.com

**BURSOR & FISHER, P.A.**
L. TIMOTHY FISHER
(admitted *pro hac vice*)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone:  925/300-4455
925/407-2700 (fax)
ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
ALEC M. LESLIE
(admitted *pro hac vice*)
MAX S. ROBERTS
(admitted *pro hac vice*)
888 Seventh Avenue
New York, NY 10019
Telephone:  646/837-7150
212/989-9163 (fax)
aleslie@bursor.com
mroberts@bursor.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                                    - 52 -

BYRNES ✦ KELLER ✦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

**ZIMMERMAN REED LLP**
BRIAN C. GUDMUNDSON
(admitted *pro hac vice*)
JASON P. JOHNSTON
(admitted *pro hac vice*)
MICHAEL J. LAIRD
(admitted pro hac vice)
1100 IDS Center
80 South 8th Street
Minneapolis, MN  55402
Telephone:  612/341-0400
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com

**LOCKRIDGE GRINDAL
NAUEN P.L.L.P.**
ROBERT K. SHELQUIST
(admitted *pro hac vice*)
REBECCA A. PETERSON
(admitted *pro hac vice*)
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
Telephone:  612/339-6900
612/339-0981 (fax)
rkshelquist@locklaw.com
rapeterson@locklaw.com

*Interim Counsel for Plaintiffs and the Class*

**CUNEO GILBERT & LADUCA, LLP**
Michael J. Flannery (admitted *pro hac vice*)
500 North Broadway
Suite 1450
St. Louis, MO  63102
Phone (work): (314) 226-1015 (direct)
Phone (cell): (314) 330-2771
e-mail:  mflannery@cuneolaw.com
website:  www.cuneolaw.com

**CUNEO GILBERT & LADUCA, LLP**
Charles J. LaDuca (admitted *pro hac vice*)
4725 Wisconsin Avenue NW
Suite 200
Washington, DC 20016

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 53 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Telephone: 202 789 3960
www.cuneolaw.com

**CARSON NOEL PLLC**
Wright A. Noel
20 Sixth Avenue NE
Issaquah, WA 98027
Telephone: (425) 837-4717
Facsimile: (425) 837-5396
E-Mail: wright@carsonnoel.com

*Additional Counsel for Plaintiffs and
the Class*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL

- 54 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on the 12th day of January, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

/s/ Bradley S. Keller
Byrnes Keller Cromwell LLP
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522
bkeller@byrneskeller.com

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS FIRST AMENDED
CONSOLIDATED COMPLAINT
Case No.: 2:21-cv-00750-RSL                      - 55 -

BYRNES ♦ KELLER ♦ CROMWELL LLP
38TH FLOOR
1000 SECOND AVENUE
SEATTLE, WASHINGTON 98104
(206) 622-2000