1

**DICKINSON WRIGHT PLLC**
Steven A. Caloiaro, Bar No. 284410
scaloiaro@dickinsonwright.com
100 West Liberty Street, Suite 940
Reno, Nevada 89501-1991
Tel: (775) 343-7500
Fax: (844) 670-6009

2

3

4

5

John S. Artz, (*pro hac vice*)
Email: JSArtz@dickinsonwright.com
350 S. Main Street, Suite 300
Ann Arbor, MI 48107
Tel: (734) 623-7075
Fax: (844) 670-6009

6

7

8

9

*Attorneys for Defendants Bestway*
*(USA) Inc., Bestway (Hong Kong)*
*International Ltd., and Bestway*
*Inflatables and Material Corporation*

10

11

12

13

## UNITED STATES DISTRICT COURT

14

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

15

16

| | |
|---|---|
| In Re: Intex Recreation Corp., et al. | Lead Case No.: 2:16-cv-03300-JAK (Ex) |

17

18

| | |
|---|---|
| Intex Recreation Corp., | Consolidated Case No.: 2:16-cv-03950 JAK (Ex) |

19

Plaintiff,

20

**BESTWAY'S NOTICE AND MOTION FOR SUMMARY JUDGMENT (NON-INFRINGEMENT AND NO WILLFUL INFRINGEMENT) AND PARTIAL SUMMARY JUDGMENT (SIMEX ESTOPPEL)**

v.

21

22

Bestway (USA), Inc., et al.

23

Defendants.

24

25

Hon. John. A Kronstadt
Hearing Date: October 23, 2023
Hearing Time: 8:30 a.m.

26

27

28

DICKINSON WRIGHT PLLC

**PLEASE TAKE NOTICE** that on October 23, 2023 at 8:30 a.m., or as soon thereafter as counsel may be heard, Defendants, Bestway (USA) Inc., Bestway (Hong Kong) International, Ltd., and Bestway Inflatables & Materials Corporation (collectively, "Bestway") shall and hereby move the Court, pursuant to Federal Rule of Civil Procedure 56, for an Order granting Bestway summary judgment of non-infringement and no willful infringement and partial summary judgement of no estoppel as it relates to the Simex Product. This Motion is based on this Notice of Motion and Supporting Memorandum of Points and Authorities, Bestway's Statement of Uncontroverted Facts and Conclusions of Law, the accompanying Declaration of Steven A. Caloiaro ("Caloiaro Decl.") along with its attached exhibits, and such other written or oral argument and evidence as may be presented at or before the time this Motion is deemed submitted to the Court.

This Motion is made following the conference of counsel required by L.R. 7-3, which took place on August 10, 2023 and subsequent correspondence. Counsel for Plaintiff informed counsel for Defendants that Plaintiff opposes this Motion.

Dated: August 18, 2023                    DICKINSON WRIGHT PLLC

                                          */s/ Steven A. Caloiaro*
                                          Steven A. Caloiaro, CA Bar No. 284410
                                          100 West Liberty Street, Suite 940
                                          Reno, Nevada 89501-1991
                                          Tel: (775) 343-7500
                                          Fax: (844) 670-6009
                                          scaloiaro@dickinsonwright.com

                                          John S. Artz
                                          MI Bar No. P48578 (*pro hac vice*)
                                          350 S. Main Street, Suite 300
                                          Ann Arbor, MI 48107
                                          Tel: (734) 623-7075
                                          Fax: (844) 670-6009
                                          jsartz@dickinsonwright.com

                                          *Attorneys for Defendants Bestway (USA)*
                                          *Inc., Bestway (Hong Kong) International*
                                          *Ltd., and Bestway Inflatables and Material*
                                          *Corporation*

# **TABLE OF CONTENTS**

I.      **INTRODUCTION** ............................................................................1

II.     **FACTUAL BACKGROUND** ...........................................................2

    A.    The Diagonally-Extending "Frame Members" Required by Claims 18-22 Must Be *Structures Designed to Support the Shape of the Inflatable Air Chamber* ...............................................................4

    B.    The "Annular Perimeter Rim" Recited in Claim 30 Must Be Attached to: (1) the Internal Wall, (2) the Upper Layer of the Bottom Wall, and (3) the Lower Layer of the Bottom Wall....................5

    C.    Intex's Willful Infringement Claim ...........................................7

III.   **LEGAL STANDARDS** ..................................................................8

    A.    Summary Judgment .....................................................................8

    B.    Patent Infringement .....................................................................8

    C.    Willful Infringement ...................................................................9

IV.   **SUMMARY JUDGMENT OF NON-INFRINGEMENT IS APPROPRIATE** ..............................................................................10

    A.    None of the Accused Products Include "Frame Members [that] Extend Diagonally" and Intex Has Failed to Establish Otherwise .........10

    B.    None of the Accused Products Include an "Annular Perimeter Rim" and Intex Has Failed to Establish Otherwise ................................15

V.    **SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT IS APPROPRIATE** ..............................................................................19

    A.    There Is No Evidence that Bestway's Conduct Was Either Egregious or Willful ..................................................................19

VI.   **SUMMARY JUDGMENT OF NO ESTOPPEL ON THE SIMEX PLANSCHBECKEN FANCY POOL IS APPROPRIATE**.......................21

VII.  **CONCLUSION**..............................................................................24

1

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................ 8

*Apple Inc. v. Samsung Elecs. Co.*,
    2012 WL 2499929 (N.D. Cal. June 27, 2012) ............................... 5

*Asetek Danmark A/S v. CoolIT Systems Inc.*,
    2019 WL 7589209 (N.D. Cal., 2019) ............................................ 23

*Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*,
    731 F.2d 831 (Fed. Cir. 1984) ...................................................... 8

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ........................................................... 8, 9, 10

*Exigent Tech., Inc. v. Atrana Sols., Inc.*,
    442 F.3d 1301 (Fed. Cir. 2006) .............................................. 9, 10

*Foundton, Co. v. Naschem Co.*,
    2016 WL 7443228 (C.D. Cal. Nov. 21, 2016) .............................. 9

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
    579 U.S. 93 (2016) ................................................................... 9, 10

*ICU Med., Inc. v. Alaris Med. Sys., Inc.*,
    558 F.3d 1368 (Fed. Cir. 2009) .................................................... 4

*Ironburg Inventions Ltd. v. Valve Corporation*,
    64 F.4th 1274 (Fed. Cir. 2023) ................................................... 22

*Palomar Tech., Inc. v. MRSI Sys., LLC*,
    2020 WL 2115625 (D. Mass., 2020) ............................................ 23

*Palomar Technologies, Inc. v. MRSI Systems, LLC*,
    373 F.Supp.3d 322 (D. Mass., 2019) .......................................... 22

*Pavo Solutions LLC v. Kingston Technology Company, Inc.*,
    2020 WL 1049911 (C.D. Cal., 2020) ........................................... 23

*Plumley v. Mockett*,
    836 F. Supp. 2d 1053 (C.D. Cal. 2010) ...................................... 20

*SAS Inst., Inc. v. Iancu*,
    138 S. Ct. 1348 (2018) ................................................................. 7

*Signal IP, Inc. v. Kia Motors Am., Inc.*,
    2016 WL 6775690 (C.D. Cal. Apr. 22, 2016) ............................... 8

*Smith v. Extreme Performance 1, LLC*,
    2020 WL 5092913 (C.D. Cal. June 23, 2020 ...................................................... 21

*Sound View Innovations, LLC v. Hulu, LLC*,
    2020 WL 6821317 (C.D. Cal. Oct. 20, 2020) ......................................................... 8

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
    930 F.3d 1295 (Fed. Cir. 2019) .................................................................. 20

*Taurus IP, LLC v. DaimlerChrysler Corp.*,
    726 F.3d 1306 (Fed. Cir. 2013) .................................................................... 9

*TGIP, Inc. v. AT&T Corp.*,
    527 F.Supp.2d 561 (E.D.Tex. 2007) ................................................................ 20

*Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*,
    212 F. Supp. 3d 254 (D. Mass. 2016) ............................................................... 9

*Universal Elecs. Inc. v. Roku, Inc.*,
    2019 WL 1877616 (C.D. Cal. Mar. 5, 2019) ....................................................... 21

*Vaporstream, Inc. v. Snap Inc.*,
    2020 WL 136591 (C.D. Cal. Jan. 13, 2020) ....................................................... 21

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) .................................................................... 9

*WesternGeco L.L.C. v. ION Geophysical Corp.*,
    837 F.3d 1358 (Fed. Cir. 2016) .................................................................... 9

## **Statutes**

35 U.S.C. § 103 .......................................................................................... 7

35 U.S.C. § 325(e)(2) ................................................................................. 22

## **Rules**

Fed. R. Civ. P. 56(a) .................................................................................. 8

## I.     INTRODUCTION

Defendants, Bestway (USA) Inc., Bestway (Hong Kong) International, Ltd., and Bestway Inflatables & Materials Corporation (collectively, "Bestway"), move this Court for summary judgment of non-infringement and no willful infringement. Summary judgment of non-infringement is warranted because Intex does not and cannot show that the accused spa products include "frame members [that] extend diagonally" as required by asserted claims 18-22 of U.S. Patent No. 9,254,240 (the "'240 Patent"). In accordance with this Court's controlling claim construction ruling, "frame members" are "structures designed to support the shape of the inflatable air chamber." (Dkt. 181 at 10.) *Bestway's accused products simply do not incorporate any diagonally extending structures designed to support the shape of the spas' inflatable air chamber*. Intex's failed *Markman*-related position and inappropriate attempt to substitute a new infringement theory during expert discovery demonstrate that Intex itself recognizes the insufficiency of its infringement assertions with respect to each of claims 18-22. Furthermore, summary judgment of non-infringement of asserted claim 30 is similarly warranted because Intex does not and cannot show that the accused products include a bottom wall having a separate "annular perimeter rim" connected as expressly defined by the claim language itself.

As also detailed below, Bestway's reasonable belief that the claims of the '240 Patent are invalid—many of which the PTAB did invalidate during the course of this litigation—precludes a finding of willful infringement and judgment to this effect should be entered as a matter of law.

Finally, Bestway moves for a finding of summary judgment that it is not estopped from asserting that the '240 Patent is invalid in light of prior art combinations involving the Simex Planschbecken Fancy Colors pool (hereinafter, the "Simex Product"). Intex has not and cannot present evidence that Bestway was aware of the Simex Product prior to filing the 2016 PGR, or any rational evidence showing that Bestway should have been aware of the Simex Product at that time. Failure to

present such evidence falls far short of the burden Intex has to demonstrate estoppel. Accordingly, Bestway is entitled to a finding, at the summary judgment stage, that it is not estopped from asserting the prior art Simex Product against the '240 Patent.

## II. FACTUAL BACKGROUND

Intex filed the instant action on June 6, 2016, accusing Bestway and its related entities of infringing "at least Claim 1" of the '240 Patent.[1] (Dkt. 1 at ¶ 30.) Intex later specified its belief that Bestway infringed claims 1-7, 17-22, and 30.[2] (*See* Dkt. 66 at 2.) As described in its specification, the '240 Patent relates to inflatable products having improved strength. (Caloiaro Decl. Ex. A, '240 Patent at 1:33-35, 1:45-46.) As detailed therein and further delineated by the claims themselves, the disclosed inflatable products utilize internal tensioning structures having a porous layer (or sheet) coupled to one or more attachment sheets. (*See generally id.* at 6:39-7:4, Figures 4-6, and claim 1.)

Bestway manufactures and sells inflatable spas that also contain internal tensioning members, which are at times referred to as "beams." (*See* Statement of Uncontroverted Facts ("SUF") at ¶ 1.) Specifically, Bestway first used composite, PVC-mesh-PVC tensioning members now alleged to infringe claims of the '240 Patent approximately sixteen years ago—*i.e., long before both the '240 Patent's issuance on February 9, 2016 and even its earliest potential priority date of July 18,*

---

[1] As this Court knows well, Intex's assertion of the '240 Patent is the only remaining component of the four separate infringement actions Intex brought against Bestway between May 2016 and February 2017. (*See* Dkt. 181 at 1 (setting forth the Court's succinct summary of the related actions).) Each of the actions were consolidated and all non-'240 Patent assertions have been previously dismissed—including all infringement claims related to previously-asserted U.S. Patent Nos. 6,568,011, 8,562,773, and 9,156,203. (*See id.*)

[2] As further detailed below, claims 1-7 and 17 were thereafter invalidated by the Patent Trial and Appeal Board ("PTAB") in view of prior art presented by Bestway. (*See generally* Dkt. 171-5.) Consequently, the only claims of the '240 Patent that remain at issue are dependent claims 18-22 and 30. Asserted claims 18-22 depend from invalidated claim 17, which itself depends from invalidated claim 1. Asserted claim 30 depends from invalidated claim 7, which also similarly depends from invalidated claim 1.

*2013.* (SUF at ¶¶ 2-4.) To be precise, Bestway first incorporated PVC-mesh-PVC tensioning members in its Comfort Quest air bed products in 2006, which were then first sold in 2007. (SUF at ¶ 4.) An image of Bestway's promotional material relating to the 2007 Comfort Quest—along with photographs showing the general structure of the included PVC-mesh-PVC tensioning members—is shown below.

 

**Bestway's Prior Art Comfort Quest Air Bed Product[3]**

In addition to introducing inflatable products incorporating PVC-mesh-PVC tensioning members nearly ten years before the '240 Patent was issued in 2016, Bestway also developed and began selling the specific products accused in this action[4] years before the '240 Patent was issued. (SUF at ¶¶ 2, 5.) Specifically, the accused products were developed in 2013 and first sold in 2014. (*Id.*) Despite this history and the clear distinction between the '240 Patent's recited limitations and the actual structure of the accused products, Intex has continued to assert, reform, and reconfigure its infringement allegations in an attempt to stave off proper adjudication of its claims. As there are no genuine disputes of material fact as to non-infringement (and no willfulness), the Court will be right to grant Bestway's instant motion and put an end to Intex's improper assertions and shifting theories.

---

[3] Images from Bestway's Amended Final Invalidity Contentions, Dkt. 251-1 at PageID#:4251-52.
[4] As reflected in the parties' joint stipulation regarding representative products (Dkt. 214), the accused products generally fall into two representative categories that the parties refer to as the "Lay-Z-Spa" and the "SaluSpa." (SUF at ¶ 6; Dkt. 214; *see also* Caloiaro Decl. Ex. D, Sadegh (Bestway) 10/28/22 Expert Report at ¶¶ 90-92.)

A.   **The Diagonally-Extending "<u>Frame Members</u>" Required by Claims 18-22 Must Be *Structures Designed to Support the Shape of the Inflatable Air Chamber***

As noted above, asserted claims 18-22 each depend from invalidated claim 17, which itself depends from invalidated claim 1. (SUF at ¶ 7.) Accordingly, to demonstrate infringement of claims 18-22, Intex must proffer evidence that the accused products meet the limitations recited in claims 1 and 17 in addition to those of 18-22. Claim 17 recites in part—and therefore claims 18-22 require—that "portions of the plurality of frame members extend diagonally relative to the first and second seams." (SUF at ¶ 8.) In accordance with the claim construction order, "frame members" are "***structures designed to support the shape of the inflatable air chamber***." (Dkt. 181 at 10.) During claim construction, Intex sought a construction of "frame members" that omitted any support or strength requirement. (Dkt. 181 at 10: "Plaintiff's construction does not sufficiently account for the support function of the "frame members" and instead repeats the language of Claim 1.") As the Court properly recognized, such a construction would have been improper in view of the '240 Patent's stated purpose of the "frame members":

> ***The sole function of the "frame members" as described in the specification is to support the shape of the spa***. "It is entirely proper to consider the functions of an invention in seeking to determine the meaning of particular claim language." *ICU Med., Inc. v. Alaris Med. Sys., Inc.*, 558 F.3d 1368, 1375 (Fed. Cir. 2009) (internal quotation marks omitted) (construing the term "spike" to require a "pointed tip" based on function described in specification).

(Dkt. 181 at 9 (emphasis added).)

In view of the Court's claim construction ruling *and after the close of fact discovery in this matter*, Intex attempted to replace its infringement theory in connection with the diagonally-extending frame members requirement of claim 17 with a new theory. (SUF at ¶ 9; *see also* Dkt. 327.) Bestway moved to strike the

undisclosed expert opinion that sought to belatedly identify entirely new sets of allegedly diagonally-extending frame members. (SUF at ¶ 10; Dkt. 289.) The Court thereafter granted Bestway's motion and excluded Intex's new infringement theory:

> A comparison of Plaintiffs' infringement contentions with the relevant portions of the Kuchel report demonstrates that a new theory has been disclosed. Plaintiffs' argument that Kuchel merely provided evidentiary examples or complementary proofs to support Plaintiffs' existing theory is unpersuasive. In the infringement contentions, Plaintiffs distinguished between the "plurality of frame members" generally, and those frame members that "extend[] diagonally" specifically.
>
> ***
>
> In light of this prejudice, and because "striking the [new opinions from the] report [will] result in not just a trial, but an overall litigation[] that is more fair," the new opinions are excluded. *Apple Inc. v. Samsung Elecs. Co.*, 2012 WL 2499929, at *1 (N.D. Cal. June 27, 2012). Because they are untimely, the corresponding paragraphs are stricken from the Kuchel report (¶¶ 81–86 and 146–151).

(Dkt. 327 at 6.) As detailed below, Intex's attempt to entirely reform its infringement theory during expert discovery is a tacit admission of the insufficiency of Intex's original (and only) theory in view of the configuration of the accused products and the Court's claim construction.

**B.    The ″Annular Perimeter Rim″ Recited in Claim 30 Must Be Attached to: (1) the Internal Wall, (2) the Upper Layer of the Bottom Wall, and (3) the Lower Layer of the Bottom Wall**

Asserted claim 30 recites:

> 30.   The inflatable product of claim 7, *wherein the bottom wall includes an* **annular perimeter rim** *attached to the internal wall of the pool, an upper layer attached to the* **annular perimeter rim***, and a lower layer attached to the* **annular perimeter rim** *and the upper layer*, a majority of the upper layer being spaced apart from the lower layer to define a space therebetween.

('240 Patent, claim 30.) Apart from its recitation in claim 30, the term "annular perimeter rim" does not appear anywhere in the '240 Patent. (SUF at ¶ 11.) Consistent with the express language of the claim, the recited "annular perimeter rim" component is (1) "attached to the internal wall of the pool," (2) attached to "an upper layer [of the bottom wall of the pool]," and lastly (3) attached to "a lower layer [of the bottom wall of the pool]." As described in claim 7 from which claim 30 depends, the "bottom wall" cooperates with the "internal wall" to define the water cavity. (SUF at ¶ 12.) The parties have agreed—and the Court has ruled—that the plain and ordinary meaning applies to the term "annular perimeter rim." (Dkt. 181 at 8; *see also* Dkt. 167 at 2.)

Similar to the "annular perimeter rim" term, the recited "upper" and "lower" layers of the bottom wall do not appear elsewhere in the '240 Patent. (SUF at ¶ 13.) Figure 24 illustrates an embodiment of a bubbling-feature spa that appears to include a separation between upper and lower bottom wall layers in the center region of the spa (highlighted in blue below):



('240 Patent, Figure 24 (blue highlighting added).) The specification describes this configuration as including an "*air delivery chamber 388*" formed by an "*annular wall 390*" having a "*plurality of air delivery holes 392*." ('240 Patent at 13:3-9.) Notably, the patent describes (and Figure 24 illustrates) the "*air delivery chamber 388,*" which

includes the "*annular wall 390*," as a separate component from the "*bottom wall 104*"—and <u>not</u> as an example of a separation between an "upper layer" and a "lower layer" of the bottom wall.[5] (*Id.*)

### C.  Intex's Willful Infringement Claim

Intex alleges in the instant action that Bestway's alleged infringement is willful. (Dkt. 1 at ¶ 21.) However, the uncontroverted facts that Bestway developed and introduced the accused products prior to the '240 Patent's issuance and its reasonable belief that the claims of the '240 Patent are invalid precludes a finding of willful infringement. Bestway petitioned the PTAB in 2016 for post-grant review ("PGR") challenging claims 1-7, 17, 8-22, and 30 of the '240 Patent. (SUF at ¶ 17.) In its first institution decision, the PTAB granted review on Ground 1 (claims 1-7, 17), finding Bestway demonstrated that it was more likely than not to prevail on its assertion that claims 1-7 and 17 were unpatentable under 35 U.S.C. §103 over a combination of prior art. However, the PTAB declined to institute on Grounds 2 and 3 (claims 18-22 and 30) because Bestway included two alternative prior art combinations in a single ground, and therefore its arguments were deemed "unclear." (SUF at ¶ 18.) Following oral argument on Ground 1, and before the PTAB was scheduled to issue its final written decision, the Supreme Court issued *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348 (2018), holding that a decision to institute review may not institute on less than all claims challenged in the petition. After *SAS*, the PTAB issued an order modifying its institution decision to institute on all of the challenged claims and all of the grounds presented in the petition. (SUF at ¶¶ 19-20.)

---

[5] As detailed below, Intex's expert improperly ignores clear material separations present in the accused Lay-Z-Spa products in attempting to find an "annular perimeter rim" where none exists. Further still, Intex's infringement assertion against the accused SaluSpa products fails to even allege that the purported "annular perimeter rim" extends to the point at which the spa's floor separates into an upper and lower layer. Accordingly, Intex's own assertion plainly fails to allege—let alone demonstrate—that the accused SaluSpa products include an "annular perimeter rim" that ***is attached to*** an upper and lower layer of the bottom wall as expressly required by claim 30.

On November 7, 2018, the PTAB issued its final written decision, determining that Bestway had proven by a preponderance of the evidence that claims 1-7 and 17 of the '240 Patent are unpatentable. (SUF at ¶ 21.) However, consistent with its original institution decision, the PTAB also found that Bestway did not prove claims 18-22 and 30 of the '240 Patent unpatentable in view of Grounds 2 and 3. (*Id*. ¶ 22.) In response to the PTAB's final written decision, Bestway appealed the PTAB's decision on claims 18-22 and 30, and Intex appealed the PTAB's decision finding claims 1-7 and 17 invalid. (SUF at ¶ 23.) On January 9, 2020, the Federal Circuit issued a Rule 36 affirmance. (SUF at ¶ 24.)

## III. LEGAL STANDARDS

### A. Summary Judgment

This Court is well-versed in the summary judgment standard. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Summary judgment is appropriate when there are no genuine issues of material fact. *Id*. "If the evidence [in favor of the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). Of course, "[s]ummary judgment is as appropriate in a patent case as in any other." *Sound View Innovations, LLC v. Hulu, LLC*, Case No. LA VC 17-04146 JAK (PLAx), 2020 WL 6821317, at *2 (C.D. Cal. Oct. 20, 2020) (citation omitted) (granting summary judgment of noninfringement); *see also Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

### B. Patent Infringement

To obtain summary judgment of noninfringement, "nothing more is required than the filing of a summary judgment motion stating that the patentee had no evidence of infringement and pointing to the specific ways in which accused systems did not meet the claim limitations." *Signal IP, Inc. v. Kia Motors Am., Inc.*, Case No. LA CV 14-02457 JAK (JEMx), 2016 WL 6775690, at *7 (C.D. Cal. Apr. 22, 2016)

1   (quoting *Exigent Tech., Inc. v. Atrana Sols.*, *Inc*. 442 F.3d 1301, 1309 (Fed. Cir.

2   2006)) (granting summary judgment of non-infringement). "Since the ultimate

3   burden of proving infringement rests with the patentee, an accused infringer seeking

4   summary judgment of noninfringement may meet its initial responsibility either by

5   providing evidence that would preclude a finding of infringement, or by showing that

6   the evidence on file fails to establish a material issue of fact essential to the patentee's

7   case." *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1326 (Fed. Cir.

8   2013) (citation omitted).

9         If the non-moving party fails to produce evidence sufficient to show a genuine

10  issue of material fact, "the moving party is entitled to a judgment as a matter of law."

11  *Celotex*, 477 U.S. at 322-23 (citation omitted). "Summary judgment may also be

12  appropriate when a non-moving party bases its opposition on theories that are not

13  stated in its infringement contentions." *Foundton*, *Co. v. Naschem Co.,* Case No. LA

14  CV14-09829 JAK (MRWx), 2016 WL 7443228, at *5 (C.D. Cal. Nov. 21, 2016)

15  (citations omitted) (granting summary judgment of non-infringement).

16      **C.**    **Willful Infringement**

17        To demonstrate willful infringement, the patentee bears the burden of proving

18  by a preponderance of the evidence, *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S.

19  93, 107 (2016), that the accused infringer had "[k]nowledge of the patent," *WBIP,*

20  *LLC v. Kohler Co.*, 829 F.3d 1317, 1339, 1341 (Fed. Cir. 2016), and acted despite a

21  risk of infringement that "was either known or so obvious that it should have been

22  known to the accused infringer.*" WesternGeco L.L.C. v. ION Geophysical Corp.*,

23  837 F.3d 1358, 1362 (Fed. Cir. 2016), *rev'd on other grounds*, No. 16-1011, 138

24  S.Ct. 2129 (U.S. June 22, 2018). Although knowledge is a prerequisite, enhanced

25  damages may not be awarded "simply because the evidence shows that the infringer

26  knew about the patent *and nothing more*." *Halo*, 579 U.S. at 110 (Breyer, J.,

27  concurring); *see also Trs. of Boston Univ. v. Everlight Elecs. Co., Ltd.*, 212 F. Supp.

28  3d 254, 257 (D. Mass. 2016).

"Awards of enhanced damages under the Patent Act over the past 180 years establish that they are not to be meted out in a typical infringement case, but are instead designed as a 'punitive' or 'vindictive' sanction for egregious infringement behavior." *Halo*, 579 U.S. at 103. Such egregious infringement behavior has been described "as willful, wanton, malicious, bad-faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Id.* at 103-04. While district courts exercise discretion when deciding whether to award enhanced damages for willful infringement, over the years "'the channel of discretion ha[s] narrowed,' […] so that such damages are generally reserved for egregious cases of culpable behavior." *Id.* at 104.

## IV.   SUMMARY JUDGMENT OF NON-INFRINGEMENT IS APPROPRIATE

### A.   None of the Accused Products Include "Frame Members [that] Extend Diagonally" and Intex Has Failed to Establish Otherwise

Summary judgment of non-infringement of asserted claims 18-22 is appropriate because Intex has not and cannot meet its burden to show that any of the accused products satisfy the diagonally-extending frame members limitation. *See Celotex*, 477 U.S. at 322-23; *see also Exigent*, 442 F.3d at 1308-09. Again, the term "frame members" was construed to mean "***structures designed to support the shape of the inflatable air chamber***." (Dkt. 181 at 10.) In contrast to this requirement, the components of the accused products that Intex relies on to meet claim 17's diagonally-extending frame members limitation, are not designed to—and do not—support the shape of the inflatable air chamber. As set forth in the non-excluded portion of Intex's infringement expert report, Intex posits that the mesh layer's oblique binding strands satisfy the requirement of claim 17[6]:

---

[6] As demonstrated by the images included below, the oblique binding strands generally follow a zig-zag pattern within the mesh layer.



***Alleged Diagonally-Extending Binding Strands (red) of Accused <u>Lay-Z-Spa</u>***
[Kuchel (Intex) 9/28/22 Expert Report[7] at ¶ 63 (also ¶ 81)]

***Alleged Diagonally-Extending Binding Strands (red) of Accused <u>SaluSpa</u>***
[Kuchel (Intex) 9/28/22 Expert Report at ¶ 127 (also ¶ 145)]

Significantly, the oblique, zig-zag pattern strands identified by Intex are not "frame members" under the Court's claim construction because they do not support the shape of the inflatable air chamber. As the manufacturer of the at-issue mesh layer testified, the thin oblique strands are included in the mesh solely to maintain the relative orientation of the thicker vertical ("warp") and horizontal ("weft") strands

---

[7] Mr. Kuchel's opening expert report dated September 28, 2022 is attached as Ex. B to the Caloiaro Declaration.

during manufacturing—rather than for any support-related purpose. (Caloiaro Decl. Ex. C, MingLong Dep. Tr. at 23:4-25:7 (explaining that the oblique binding strands are included to prevent the vertical and horizontal strands from tangling during manufacturing and thereby are "for stabilizing the wafting and the warping").) As Bestway's expert, Dr. Sadegh, has explained, the mesh manufacturer's testimony confirms the understanding of a person of skill in the art in view of the orientation and relative thinness of the oblique binding strands (approximately *1/8th* the thickness of the vertical and horizontal strands). (Caloiaro Decl. Ex. D, Sadegh (Bestway) 10/28/22 Expert Report at ¶ 156; *see also* ¶¶ 149-155; Caloiaro Decl. Ex. E, Mesh Specification Document.) The thinness of the at-issue binding strands is accurately depicted in the following close-up image of a portion of the accused products' tensioning member:



***Close-Up Image of Portion of Accused Tensioning Member***
[Sadegh (Bestway) 10/28/22 Expert Report at ¶ 152]

Significantly, Intex's own expert, Mr. Kuchel, does not dispute that the oblique binding strands are included in the mesh to secure the orientation of the vertical and horizontal strands rather than to support the shape of the inflatable air chamber:

Q  My question is whether you disagree with the testimony of the manufacturers of the mesh, that the binding strands are placed within the mesh in order to secure the first and second strands as you've labeled them in, in your report?

A  **I don't disagree.**

(Caloiaro Decl. Ex. F, Kuchel Dep. Tr. at 235:11-19 (objection omitted); *see also* 23:2-12 (further confirming his understanding of the non-support-related role of the binding strands).)

Bestway's expert has also provided finite element analysis (FEA) calculations further supporting the understanding of a person of skill in the art and the mesh manufacturer's testimony that the oblique binding strands do not support the shape of the spa. (*See, e.g.*, Caloiaro Decl. Ex. D, Sadegh (Bestway) 10/28/22 Expert Report at ¶¶ 158-172.) That analysis—which demonstrates the oblique binding strands carry strain energies of less than 0.05% relative to the strain energies carried by the PVC portions of the composite tensioning member—has not been contradicted or otherwise rebutted in any way by Intex's expert. (*See id*. at ¶¶ 163-164, 169; SUF at ¶¶ 14-16.) Moreover, as demonstrated below, the mesh manufacturer itself refers to the at-issue mesh solely with reference to the configuration and thickness of the vertical and horizontal strands ("T500 x 500")—without consideration of the thin binding strands. (*See* Caloiaro Decl. Ex. J, Image of Physical Mesh Sample [3950bestway0688568].) This further supports the reality that oblique binding strands are not "frame members" because they play no role in supporting the spas' shape.

1
2
3
4
5
6
7



8

***Image of Physical Sample of Mesh Used in Accused Products***

9     Given Intex's understanding that the oblique binding strands are not "designed
10 to support the shape of the inflatable air chamber" and its failed claim construction
11 position seeking to omit such a requirement, Intex tried to abandon its original
12 infringement theory in favor of a new, undisclosed theory after the close of fact
13 discovery. (*See* Dkt. 327, Order re Defendants' Motion to Strike.) Indeed, while Mr.
14 Kuchel dedicated more than a dozen paragraphs of his infringement expert report to
15 Intex's new infringement theory, Mr. Kuchel failed to provide any analysis
16 specifically directed to whether the oblique binding strands themselves actually meet
17 the Court's "frame member" claim construction. Mr. Kuchel's entire "analysis"
18 relating to Intex's original infringement theory is set forth in just two conclusory
19 sentences of his report:

20         All of the frame members in the [accused products] are structures
21         designed to support the shape of the inflatable air chamber
22         because they all form the mesh reinforcing layer encased by two
23         other PVC layers. […] That is, once formed as the TRITECH™
24         3-PLY material and used as a tensioning structure, every portion
25         of that tensioning structure (the PVC and all three sets of frame
        members) work in concert with each other to support the shape
        of the inflatable spa.

26 (Caloiaro Decl. Ex. B, Kuchel (Intex) 9/28/22 Expert Report at ¶ 64; *see also* ¶ 128.)
27 During his deposition, ***Mr. Kuchel further confirmed that he did not conduct any***
28 ***analysis of whether the binding strands themselves***—apart from their presence

within the spa's tensioning member—*are actually "structures designed to support the shape of the inflatable air chamber" in accordance with the Court's claim construction*:

> Q  In your view, these statements that you've included in your report support the opinion that <u>the identified tensioning structure or beam</u> supports the shape of the spa; is that right?
>
> **A  Correct.**
>
> ***
>
> Q    And again, the position, just as you've stated in [paragraphs] 64 and 128, is that once formed the, once formed as the DuraPlus three-ply material and used as a tensioning structure, every portion of that tensioning structure works in concert with each other to support the shape of the inflatable spa?
>
> **A  Absolutely.**
>
> Q  And did you do any analysis to support your view that -- for example, the first set of frame members in [paragraph] 60 -- excuse me, in [paragraph] 64, <u>did you do any analysis to demonstrate further that the first set of frame members support the shape of the inflatable spa</u>?
>
> **A  What do you mean by "analysis"?**
>
> Q  Whatever you mean by "analysis" as you've used it in your report.
>
> **A  <u>Yeah, I don't think I said I did an analysis on sets of frame members</u>.**

(Caloiaro Decl. Ex. F, Kuchel Dep. Tr. at 85:2-86:15 (objection omitted).)

In light of the fact that the binding strands are not "designed to support the shape of the air chamber" and Intex's failure to provide contrary expert analysis (or evidence), summary judgment of non-infringement is appropriate.

### B.    None of the Accused Products Include an "Annular Perimeter Rim" and Intex Has Failed to Establish Otherwise

As already noted above, asserted claim 30 requires an "annular perimeter rim" that is (1) "attached to the internal wall of the pool," (2) attached to "an upper layer

15

[of the bottom wall of the pool]," and lastly (3) attached to "a lower layer [of the bottom wall of the pool]." (*See* '240 Patent, claim 30.) Intex's own expert agrees that each of these connections are required in order to satisfy the limitations of claim 30:

> Q  So in accordance with the actual claim language of Claim 30, can you look at that and then recite for the record, the particular attachments that are necessary in order to meet the claim limitation?
>
> **A  Attached, one, to the internal wall of the pool; two, an upper layer attached to the annular perimeter rim. So that's their second attachment. Three, a lower layer attached to the annular perimeter rim and the upper layer.**

(Caloiaro Decl. Ex. F, Kuchel Dep. Tr. at 125:5-15; *see also* 128:21-129:18.) Furthermore, as the PTAB explained in its Final Written Decision in connection with the PGR of the '240 Patent, a direct—rather than indirect—attachment between the annular rim and the other claimed components is required:

> If [two components are indirectly attached via another component], that renders this and the other attachment limitations surplusage because every component of the claimed inflatable pool could be said to be indirectly attached to every other component, and therefore there would be no need to specify three points of attachment.

(Caloiaro Decl. Ex. G, '240 Patent PGR PTAB Final Written Decision at 49.) Despite expressly agreeing with the PTAB's analysis in this regard (*see* Caloiaro Decl. Ex. F, Kuchel Dep. Tr. at 133:21-134:2), Intex's expert offers an infringement position that commits precisely this error. Instead of identifying a single "annular perimeter rim" component of the accused Bestway spas that allegedly meets the three specific connections recited in claim 30, Mr. Kuchel admittedly points to multiple discrete components in a futile attempt to identify an "annular perimeter rim" where none exists:



***Alleged "Annular Perimeter Rim" of Accused <u>Lay-Z-Spa</u>***[8]
[Kuchel (Intex) 9/28/22 Expert Report at ¶ 108 (yellow annotation added)]

With respect to the configuration of the accused Lay-Z-Spa products illustrated above, Intex's expert highlights two separate semicircle components along with a distinct portion of the spa's bottom wall itself (highlighted with the yellow bracket) as allegedly corresponding to the claimed "annular rim". Stated most simply, Intex has not and cannot identify any element of the accused Lay-Z-Spa products that is attached to the internal wall and attached to an upper and lower layer of the bottom wall. Because no single structure or component makes the required direct connections set forth in the claim, Mr. Kuchel points to multiple separate components as forming the alleged "annular perimeter rim." In so doing, Mr. Kuchel inappropriately renders the multiple attachment limitations of claim 30 surplusage "because every component of the claimed inflatable pool could be said to be indirectly attached to every other component." (*See* Caloiaro Decl. Ex. G, '240 Patent PGR PTAB Final Written Decision at 49.) Indeed, Mr. Kuchel himself previously

---

[8] Mr. Kuchel admits that he relies on ***three separate components*** of the accused Lay-Z-Spa as forming the alleged "annular perimeter rim." (Caloiaro Decl. Ex. F, Kuchel Dep. Tr. at 136:17-25.)

opined in a declaration and testified—when defending the alleged patentability of claim 30 over the prior art—that the recited "annular perimeter rim" must be a "separate and distinct component of the pool"—and not an amalgamation of other components. (Caloiaro Decl. Ex. H, Kuchel '240 Patent PGR Decl. at ¶¶ 216, 217; *see also* Caloiaro Decl. Ex. I, Kuchel 6/28/18 Dep. Tr. at 36:13-22.) As Mr. Kuchel himself specifically stated, "[i]t needs to be a separate, whether it's PVC or reinforced PVC or—material is not really important, *it is a separate component*, it appears to me, in this language [*i.e.*, claim 30]." (Ex. I, Kuchel 6/28/18 Dep. Tr. at 36:19-22 (emphasis added).)

With respect to the accused SaluSpa products—which include a slightly different configuration in relation to claim 30—Intex's expert again wrongly relies on portions of multiple separate spa components in attempting to identify an "annular perimeter rim":



***Alleged "Annular Perimeter Rim" of Accused SaluSpa*[9]**
[Kuchel (Intex) 9/28/22 Expert Report at ¶ 174 (yellow and blue annotation added)]

In addition to improperly rendering limitations of claim 30 surplusage by relying on indirect connections between multiple spa components, Mr. Kuchel's assertion with

---

[9] Mr. Kuchel admits that he relies on *two separate components* of the accused SaluSpa as forming the alleged "annular perimeter rim." (Caloiaro Decl. Ex. F, Kuchel Dep. Tr. at 139:13-17.)

respect to the accused SaluSpa products further fails to even identify connections between that alleged "annular perimeter rim" and the upper and lower layers of the spa's bottom wall. With reference to the figure above, Mr. Kuchel highlights portions of multiple, separate components *between the spa's internal wall* (depicted on the right above) *and a distinct perforated ring feature of the spa* (highlighted with the yellow bracket). In so doing, Mr. Kuchel fails to even allege that there is a portion of the spa both attached to the internal wall <u>and</u> attached to an upper and lower layer of the bottom wall, as explicitly required. Indeed, there is no separation between an upper and lower layer of the bottom of the SaluSpa products until at least beyond the weld seam to the left of spas' perforated ring feature (in the image above). Thus, Intex's expert has clearly failed to demonstrate how the accused SaluSpa products allegedly meet the "annular perimeter rim" connections recited by claim 30.[10]

Because none of the accused products satisfies each of the specific attachment requirements set forth in claim 30, they cannot be said to meet the "annular perimeter rim" limitation. Accordingly, summary judgment of non-infringement is appropriate.

## V.   SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT IS APPROPRIATE

### A.   There Is No Evidence that Bestway's Conduct Was Either Egregious or Willful

Intex fails to identify any evidence that Bestway's conduct was subjectively willful or egregious under the *Halo* standard. Importantly, Bestway first used the at-issue mesh structure in its inflatable products more than ten years before the '240 Patent issued and more than six years before Intex allegedly invented and claimed the design. Again, Bestway introduced its Comfort Quest air beds with tensioning members incorporating PVC-mesh-PVC construction in approximately 2007, whereas Intex claims a priority date of July 18, 2013 for the '240 Patent. Furthermore,

---

[10] As noted in the Factual Background section above, the '240 Patent itself describes a potential "*air delivery chamber*" as a separate component from the "*bottom wall*" rather than a separation between an "upper layer" and a "lower layer" of the bottom wall. (*See* '240 Patent at 13:3-9; *see also* Figure 24.)

Bestway developed the accused products themselves as early as March 2013—more than three years before the '240 Patent was issued. Even if the asserted claims of the '240 Patent are found to be valid—though they are not—these facts demonstrate a lack of willfulness. Indeed, the Federal Circuit has held that an alleged infringer's pre-notice (and pre-patent) development and sale of accused products weighs against a willfulness finding. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295, 1309 (Fed. Cir. 2019) ("conclud[ing] that the record is insufficient to establish that Cisco's conduct rose to the level of wanton, malicious, and bad-faith behavior required for willful infringement" and vacating district court's denial of JMOL of non-willfulness).

As demonstrated by its 2016 PGR challenge to the asserted claims, Bestway has held—and continues to hold—a good-faith belief that the asserted patent is invalid.[11] Indeed, as a result of Bestway's PGR, the PTAB invalidated claims 1-7 and 17 of the '240 Patent as unpatentable. "While a substantial question of patentability raised by a reexamination request is not dispositive in a willfulness inquiry, it is certainly relevant." *Plumley v. Mockett*, 836 F. Supp. 2d 1053, 1075 (C.D. Cal. 2010). Indeed, a finding of willfulness is not appropriate where a party is successful in persuading the USPTO to reject various claims of a challenged patent as unpatentable as Bestway has done here. *Id.*, *citing TGIP, Inc. v. AT&T Corp.*, 527 F.Supp.2d 561 (E.D.Tex. 2007) (holding patentee's willful infringement claim fails as a matter of law where the PTO requires amendments to the patent before issuing a reexamination certificate.).

Additionally, although the accused spas do not infringe any valid claim of the '240 Patent, Bestway has also now replaced the accused spa models with new, non-infringing alternative spas as a backstop to foreclose future infringement allegations

---

[11] Of course, in addition to invalidity, Bestway also continues to hold a good-faith belief that it does not infringe any claim of the '240 Patent still asserted in this action. (*See, e.g.*, Section IV *supra*; *see also* Caloiaro Decl. Ex. D, Sadegh (Bestway) 10/28/22 Expert Report.)

on those models. Despite Intex's specious counterargument, Bestway has a good-faith belief that the redesigned spas do not infringe the asserted claims. (*See* Caloiaro Decl. Ex. K, Sadegh (Bestway) 6/7/23 Supplemental Expert Report.)

Moreover, Bestway's knowledge of Intex's infringement claim cannot support a finding of willful infringement alone. *See, e.g., Vaporstream, Inc. v. Snap Inc.*, 2020 WL 136591, at *20 (C.D. Cal. Jan. 13, 2020) ("evidence that a defendant infringed and induced others to infringe a patent, by itself, is insufficient to support a finding of willful infringement."); *see also Universal Elecs. Inc. v. Roku, Inc.*, 2019 WL 1877616, at *14 (C.D. Cal. Mar. 5, 2019) (noting that the majority of district courts in the Ninth Circuit have held that "knowledge and continued infringement alone" are insufficient to support a claim for willful infringement). "Pursuant to *Halo*, [the majority of district courts in the Ninth Circuit] has concluded that although knowledge and continued infringement are pre-requisites to showing willfulness, a plaintiff must also show that the defendant engaged in 'egregious misconduct.'" *Smith v. Extreme Performance 1, LLC*, 2020 WL 5092913, at *5 (C.D. Cal. June 23, 2020) (dismissing plaintiff's willful infringement claim). Bestway's positions and actions in connection with this litigation demonstrate that it has not in any way engaged in egregious misconduct that is required to support a willfulness claim.

As noted above, Bestway has a continuing good-faith belief in its non-infringement and invalidity positions, adopted non-infringing alternative spas, and has not engaged in any "egregious" activities of infringement. In view of these factors, the Court should grant summary judgment of no willful infringement.

## VI.   SUMMARY JUDGMENT OF NO ESTOPPEL ON THE SIMEX PLANSCHBECKEN FANCY POOL IS APPROPRIATE

Intex cannot prove by a preponderance of evidence that Bestway knew or reasonably should have known about the Simex Product. There is no material dispute of fact and therefore Bestway is entitled to a judgment that it is not estopped from presenting evidence to the jury that the Simex Product is an invalidating prior art

reference.[12]

Under 35 U.S.C. § 325(e)(2), the petitioner in a PGR is estopped from arguing that a claim is invalid on any ground that the petitioner raised or reasonably could have raised during that PGR. The term "raised or reasonably could have raised" has been defined to include any reference that a petitioner knew about or that "a skilled searcher conducting a diligent search reasonably could have been expected to discover." *Palomar Technologies, Inc. v. MRSI Systems*, LLC, 373 F.Supp.3d 322, 331 (D. Mass., 2019) *citing* 157 Cong. Rec. S1375 (daily ed. Mar. 8, 2011) (statement of Sen. Kyl); *Ironburg Inventions Ltd. v. Valve Corporation*, 64 F.4th 1274, 1298 (Fed. Cir. 2023). "[W]hether a skilled, diligent search reasonably should have uncovered a reference is a question of fact." *Palomar*, 373 F. Supp. 3d at 331. The burden is on the plaintiff to prove, by a preponderance of the evidence, that a skilled searcher conducting a diligent search reasonably would have been expected to discover the references. *Ironburg*, 64 F.4th at 1299.

> To be clear, the standard cannot be that a reasonable search could have, or might have, discovered the disputed reference. It is almost always possible to construct a search scenario—particularly with the benefit of hindsight—under which a skilled searcher could locate a reference with a relatively small number of steps. Instead, the standard must account for the fact that the relevant databases are huge, the technology is often complex, and there are almost infinite ways to construct a search. The touchstone is reasonableness, not perfection. Accordingly, the appropriate standard for the objective prong is one of probability, not possibility: that is, whether it is more probable than not that a skilled searcher conducting a diligent search reasonably could have been expected to discover the disputed reference.

---

[12] For the avoidance of doubt, Bestway asserts that it is not estopped from raising any of the prior art on which it relies because Intex has not presented evidence of actual knowledge of any the references/combinations or that a skilled expert conducing a reasonably diligent search could have been expected to discover them. However, with respect to the other references there are issues of fact or a battle of the experts that makes summary judgment—in either direction—inappropriate. No such issue exists with respect to the Simex Product addressed herein.

*Palomar Tech., Inc. v. MRSI Sys., LLC*, 2020 WL 2115625, at *3 (D. Mass., 2020).

First, Intex has provided no evidence that Bestway objectively knew about the Simex Product. (SUF at ¶ 25.)   The only evidence proffered is that in 2013, the general manager of an unrelated Bestway entity—Simone Zesi—knew that a German company had a deal with Simex for flocked air beds. (SUF at ¶ 26.) Intex's searching expert, Mr. Kramer, admitted that he was not aware of anyone at Bestway who had any actual knowledge of the Simex Product. (SUF at ¶ 27.) Similarly, Bestway USA's CEO testified that he did not even know who Simex was—let alone have knowledge of the Simex Product. (SUF at ¶ 28.) Indeed, Intex has not proffered any evidence of knowledge by any Bestway entity of either the Simex Product or even the catalog that contained the Simex Product. *See, e.g., Palomar Technologies, Inc.*, 2020 WL 2115625, at *9.

Second, neither of the experts retained by Intex has offered any factual evidence that a skilled searcher conducting a reasonably diligent search would have discovered, or would have been expected to discover, the Simex Product. One way the proponent of estoppel can show what a skilled searcher conducting a diligent search could have been expected to discover is to "(1) to identify the search string and search source that would identify the allegedly unavailable prior art and (2) present evidence, likely expert testimony, why such a criterion would be part of a skilled searcher's diligent search." *Pavo Solutions LLC v. Kingston Technology Company, Inc.*, 2020 WL 1049911, at *4 (C.D. Cal., 2020); *Asetek Danmark A/S v. CoolIT Systems Inc.*, 2019 WL 7589209, at *8 (N.D. Cal., 2019). However, neither of Plaintiff's experts conducted any search—let alone a search that could have been expected to uncover the Simex Product. (SUF at ¶¶ 29-30.)[13]

> Q   Okay. So you don't provide an opinion that if the person requesting the search for the '240 patent provided the searcher with information on the Simex pool in Paragraph 42, you provide

---

[13] Notably, Bestway's own expert, Dr. Bowman conducted a search and was unable to find the Simex Product. (SUF at ¶ 31.)

no opinion that a searcher would have otherwise located it?

   **A  Correct. It's outside the scope of, of this opinion.**

(Caloiaro Decl. Ex. L, 4/18/23 Deposition Transcript of Terry Kramer at 192:11-19 (objection omitted).)

  Instead, both of Intex's experts identically concluded that Bestway should have known about the Simex Product based upon conjecture that certain catalogs were publicly available and that because Bestway engaged in competitive intelligence, it should have been aware of the Simex Product. However, the only actual evidence cited purportedly in support of this conjecture is the same email referenced above from a non-party regarding a separate product (flocked air beds) in the German market. (SUF at ¶ 26.) There is nothing supporting any claim that Bestway had any Simex catalog or any competitive intelligence that Simex manufactured inflatable pools—let alone the Simex Product at issue here.

  In summary there is **<u>no evidence</u>** that:

- Bestway USA or its officers were aware of Simex;
- Bestway saw Simex at a trade show;
- Bestway had the Simex catalog at issue or any other catalog;
- Bestway was aware of the Simex Product; or
- That a skilled expert conducing a reasonably diligent search could have been expected to discover the Simex Product.

Accordingly, Intex simply cannot show by a preponderance of evidence that Bestway knew of the Simex Product or that a skilled expert conducting a reasonably diligent search could have been expected to discover the Simex Product. Thus, Bestway should not be estopped from asserting the Simex Product as invalidating prior art.

## VII. CONCLUSION

  For the foregoing reasons, Bestway respectfully requests that this Court grant its instant motion and enter summary judgment of non-infringement, no willful

1    infringement, and that Bestway is not estopped from asserting invalidity based on the
2    Simex Product.
3
4    Dated:  August 18, 2023                    DICKINSON WRIGHT PLLC
5                                               */s/ Steven A. Caloiaro*
                                               Steven A. Caloiaro, CA Bar No. 284410
6                                               100 West Liberty Street, Suite 940
                                               Reno, Nevada  89501-1991
7                                               Tel: (775) 343-7500
                                               Fax: (844) 670-6009
8                                               scaloiaro@dickinsonwright.com
9
                                               John S. Artz
10                                              MI Bar No. P48578 (*pro hac vice*)
                                               350 S. Main Street, Suite 300
11                                              Ann Arbor, MI 48107
                                               Tel: (734) 623-7075
12                                              Fax: (844) 670-6009
                                               jsartz@dickinsonwright.com
13
                                               *Attorneys for Defendants Bestway (USA)*
14                                              *Inc., Bestway (Hong Kong) International*
                                               *Ltd., and Bestway Inflatables and Material*
15                                              *Corporation*
16
17
18
19
20
21
22
23
24
25
26
27
28